458 P.2d 115

Rockford R. RIGGS, Appellant,

v.

David H. MURDOCK, dba David H. Murdock Development Company, Appellee.

No. 1 CA–CIV 823.

Court of Appeals of Arizona,
Division 1.

Department B.

Sept. 2, 1969.

Rehearing Denied Sept. 29, 1969.

Review Denied Nov. 12, 1969.

Leven B. Ferrin, Phoenix, for appellant.

Gust, Rosenfeld & Divelbess, by Richard A. Segal, Phoenix, for appellee.

JACOBSON, Judge.

The confusion in nomenclature shown by the defendant's pleadings in this action points up the confusion existing in the law of landlord and tenant. In this field, the law of property rights have been blended with the law of contracts to such an extent that, depending upon what court is speaking, the practitioner is left in a quandary as to what law applies.

This quandary arose in an action by DAVID H. MURDOCK, dba DAVID A. MURDOCK DEVELOPMENT COMPANY, Plaintiff-appellee, against ROCKFORD R. RIGGS, Defendant-appellant, and JULIA W. RIGGS, his wife, for rentals due and owing under the terms of a lease executed by Appellant ROCKFORD R. RIGGS for office space located in the Guaranty Bank Building located in Phoenix, Arizona.

The trial court, sitting without a jury, entered judgment against Defendant ROCKFORD R. RIGGS for the sum of $8,097.16, together with attorney's fees in the sum of $600.00. The court found in favor of Defendant, JULIA W. RIGGS, wife of ROCKFORD R. RIGGS, and no cross-appeal has been taken from this judgment.

The Defendant by his amended answer in Superior Court raised the defense of "actual or constructive eviction." In this court he defends on the theory of "surrender or extinguishment" of the lease. What the defendant is saying, both in the trial court and here, is "Mr. Landlord, you did some acts in connection with my lease which were inconsistent with my rights as a tenant and therefore I don't have to pay you rents." We are called upon to determine whether under the following facts such a defense is applicable here.

On May 7, 1963, the Defendant signed a lease with Plaintiff on Suite 910 in the Guaranty Bank Bldg. to be used as a real

estate office, for a term of five years beginning on June 1, 1963, at a monthly rental of $359.95 payable on the first day of each month in advance. The lease by addendum contained an "escape clause," which provided that the lessee was granted an option to cancel the lease at the end of the third year upon sixty days' written notice and the payment of $600.00.

The Defendant occupied the suite until July 27, 1963, when he vacated the premises. There is no contention that the vacating of the premises by the Defendant at this time operated as an abandonment by the Defendant of the lease. The subsequent actions of the Defendant bear this out. On September 17, 1963, Defendant through his own efforts, obtained a subtenant, Mr. Kelly of Executive Properties, Inc., to occupy the premises and advised the Plaintiff by letter dated September 17, 1963, that Mr. Kelly would occupy the suite on a month-to-month basis; and that Mr. Kelly was to pay the same rental as Defendant had agreed and these sums were to be paid in advance. The letter further provided:

"You are hereby authorized and directed to collect said sum from Mr. Kelly or his associates and *to apply the same toward the amount due under the lease of said space.*" (Emphasis supplied.)

The letter concluded with the statement "if there is any problem with this arrangement, please notify me immediately, or this will serve as a memorandum of the agreement." There was no further correspondence or contact between Plaintiff and Defendant concerning this lease until December 10, 1964, at which time Defendant was notified by letter from the Plaintiff that "your subtenant in Suite 910 has been locked out as of December 9, 1964, for nonpayment of back rent in the amount of $1,713.21 * * *. Should we not recover the entire amount and deem the remainder uncollectible, we will immediately notify you of the amount due. * * *. Please let us know whether you are planning to use the office yourself or find another subtenant. We will, of course, do everything possible to locate a subtenant for you."

In the interim between the Defendant's letter of September 17, 1963, and Plaintiff's letter of December 10, 1964, various difficulties arose in the collection by Plaintiff of the rent from Mr. Kelly, the rental being in arrears on several occasions by one or two months. The last valid rental payment made by Mr. Kelly was on August 10, 1964 for the months of June and July, 1964. No rental was received from Mr. Kelly for the months of August, September, October, November and December, 1964, although a check was received by Plaintiff on November 6, 1964, from Mr. Kelly for $800.00, but was returned by the bank sometime later as being drawn on a nonexistent branch. Plaintiff at the time of the delivery of the $800.00 check, but prior to its return, advised Mr. Kelly that he would have to bring the rental arrearage current by December 7, 1964. Mr. Kelly failed to pay the arrearage by that date, whereupon, Plaintiff locked Kelly out of the premises, claimed a landlord's lien on his furniture, and subsequently sold the same, applying the proceeds to the rental arrearage. In May, 1964, Kelly as subtenant, submitted to Plaintiff another subtenant who was rejected by Plaintiff because of his poor payment record and difficulties with the law. Plaintiff voluntarily canceled the lease as of June 30, 1966, under the "escape clause" provision of the lease set forth above and charged the Defendant an additional $600 as provided.

Suit was brought by Plaintiff for rents due from August 1, 1964, to June 1, 1966, less the amount obtained by sale of Mr. Kelly's furnishings together with the $600 penalty and attorneys fees as provided under the terms of the lease.

■ As we have indicated, the theories of "constructive eviction" and "surrender by operation of law" were raised by defendant. The rule of law applicable to both of these theories is: Where the parties to a lease do some act so inconsistent with the relationship of landlord and tenant as to

imply that they *both* agree to consider the lease at an end and to yield up the estate, a cancellation of the lease under the principles of estoppel occur. 3A G. Thompson, Real Property Sec. 1344 (repl. ed. 1959); Annot., 78 A.L.R.2d 933 (1961).

■ This defense can arise under two separate and distinct fact situations:

(1) An initial act by the landlord which renders the lease unavailing to the tenant or deprives him of the beneficial enjoyment of the premises and by reason of the acts of the landlord the tenant vacates the premises. (This has been defined as "constructive eviction". Automobile Supply Company v. Scene-In-Action Corp., 340 Ill. 196, 172 N.E. 35, 69 A.L.R. 1085 (1930); Kulawitz v. Pacific Woodenware & Paper Co., 25 Cal.2d 664, 155 P.2d 24 (1944).)

(2) An initial abandonment of the leased premises by the tenant and an unqualified retaking of possession of the property by the landlord. (This generally has been referred to as "surrender by operation of law". Dorcich v. Time Oil Co., 103 Cal. App.2d 677, 230 P.2d 10 (1957); 4 H. Tiffany, Real Property Sec. 962 (3d ed. 1939).)

The legal problems most frequently arise under the second set of circumstances set forth above, dealing primarily with what constitutes an abandonment by the tenant and what constitutes an unqualified retaking of possession or reentry by the landlord, in absence of lease provisions dealing with the problems.

■ The courts have differed as to the test in determining legal principles to be applied in these cases. These differences arise primarily from whether the court considers the action one for breach of contract or one for interference with real property rights. We believe the best rule, and the one based upon the soundest reasoning, is that the question of the tenant's abandonment and the intent of the landlord in accepting that abandonment are questions of fact depending upon all the surrounding circumstances. Belanger v. Rice, 2 Utah 2d 250, 272 P.2d 173 (1954); cf. Smith v. Neely, 93 Ariz. 291, 380 P.2d 148 (1963).

Under this principle, the trier of facts must look at all the evidence in light of the surrounding circumstances and determine whether the dominion and control exercised by the landlord was for the landlord's own benefit or for the benefit of and on behalf of the original tenant. Cf. Noce v. Stemen, 77 N.M. 71, 419 P.2d 450 (1966); McGrath v. Shalett, 114 Conn. 622, 159 A. 633 (1932); Annot., 110 A.L.R. 368 (1937).

■ A corollary to this rule is that if the tenant expressly or impliedly agrees that his landlord may relet the abandoned premises for the tenant's account, the landlord in reletting is merely consenting, as an agent of the tenant, to try to reduce the tenant's liability under the existing lease. 1 J. Rasch, Landlord & Tenant Sec. 814, at 660 (1950).

We feel the above principles to be the law in this area, in the absence of any provision of the lease touching on the problem.

■ Applying these principles to this case, it appears that the Defendant cannot take advantage of any action, initially by the landlord which interfered with his peaceful enjoyment of the premises. Although the Defendant attempted to introduce evidence showing a change in the parking situation by the Plaintiff which would justify his leaving the premises prior to July 27, 1963, his subsequent actions in obtaining a subtenant and his letter to the Plaintiff dated September 17, 1963, negates the necessary intention on his part to abandon the premises.

■ The Defendant does contend, however, that the Plaintiff's failure to communicate with him concerning the difficulties the Plaintiff was experiencing in collecting rent from Mr. Kelly and the Plaintiff's dealings with Mr. Kelly operated to release him from the obligation to pay rent. However, as we have seen, in order for the acts of the landlord to be construed as an acceptance of the leased premises, there must first exist an abandonment of the premises by the Defendant. The record is completely absent of any evidence showing that prior to December, 1964, the De-

fendant intended to abandon or did abandon the leased premises. On the contrary, the exact opposite is true. The Defendant obtained a subtenant and expressly directed the Plaintiff to apply the rentals obtained from him "toward the amount due under the lease of the space." The first time that an abandonment could be attributed to the Defendant was in December, 1964, when, after demand for rent was made by Plaintiff, the Defendant refused to pay rent and refused to occupy the premises. However, there is no evidence that the Plaintiff did anything in connection with the premises after that date which could be attributed to an acceptance of the abandonment by the Defendant.

The Defendant urges that this inaction on the part of the Plaintiff as to the leased premises has some bearing on the issue. Although not stated as such, we assume the Defendant is asserting that the Plaintiff had a duty to relet the premises and mitigate his damages.

■■■ The doctrine of mitigation of damages is founded primarily in breach of contract actions and the resulting damage therefrom. Cf. Rio Grande Oil Co. v. Pankey, 50 Ariz. 529, 73 P.2d 707 (1937). However, as we have seen, the relationship of landlord and tenant is governed by principles of property law as well as contract law. In a lease transaction, moreover, a failure to reenter by a landlord on an abandonment by a tenant is, in essence, an affirmation of the lease, and the resulting cause of action by the landlord is for rentals due under the lease, rather than for damages for breach of contract. It would appear then, that the doctrine of mitigation of damages should not be applied in landlord-tenant transactions. Baird, A Study of Arizona Lease Terminations, 9 Ariz.L. Rev. 187 (1967); Sancourt Realty Corp. v. Dowling, 220 App.Div. 660, 222 N.Y.S. 288 (1927); Annot., 21 A.L.R.3d 534 (1968).

This court does not feel the language of Camelback Land & Inv. Co. v. Phoenix Entertainment Corp., 2 Ariz.App. 250, 407 P.2d 791 (1965) is contrary to this position.[1] In that case, the lease itself provided that the landlord was required to "relet the same for the account of the tenant" and thus, the landlord was under a contractual duty to mitigate.

■■■ The fact then, that Plaintiff allowed the leased premises to remain vacant for a period of one and one-half years, until June 30, 1966, under our holding that the landlord has no duty to relet in mitigation of his damages, does not aid defendant.

■■■ Nor does the fact that Plaintiff refused to accept a subtenant of Mr. Kelly's evidence an interference by the landlord justifying cancellation of the lease. The lease itself provided that subtenants were subject to the reasonable approval of the Plaintiff. The reasons given by Plaintiff for this refusal to sublet appears to us to be reasonable.

■■■ One further comment should be made concerning the act of Plaintiff in locking out the subtenant and claiming a landlord's lien on the subtenant's property. These actions, in and of themselves, may be some evidence of an act by the landlord inconsistent with the peaceful and quiet enjoyment of Defendant's subtenant's occupancy which would justify the vacating of the premises by the Defendant. However, the Defendant expressly directed the Plaintiff to collect the rentals from the subtenant. By reason of the resulting agency arising from this direction, we feel the acts of the Plaintiff in applying a landlord's lien on the subtenant's property was consistent with the collection agency. We do not, however, intend to imply that in a proper action, properly pled, that an agent can escape liability to his principal by failing to advise his principal concerning the sub-

---

1. This court stated:
  "* * * ordinarily the lessor would have the right to hold the lessee liable for rents due for the balance of the term of the lease, subject to the lessor's duty to attempt to mitigate damages to the credit of the lessee." 2 Ariz.App. at 254, 407 P.2d at 795.

ject of the agency, to the principal's detriment.

We make no ruling as to whether the trial court was justified in entering judgment for the $600.00 penalty payable under the "escape clause" of the lease, as this question was not briefed or argued either by appellant or appellee.

In view of our holding that the intent of the parties as expressed by their actions is a question of fact, the holding of the trial court granting judgment to the Plaintiff will not be disturbed on appeal if there is any evidence or theory of law to support that judgment.

The judgment of the trial court being consistent with the law and sustained by the evidence, the same is affirmed.

EUBANK, P. J., Department B, and HAIRE, J., concur.