528 P.2d 637

**Jay DUSHOFF and Diane Dushoff, his wife, Appellants,**

v.

**The PHOENIX COMPANY, a limited partnership, Appellee.**

**No. I CA–CIV 2142.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 26, 1974.

Rehearing Denied Feb. 13, 1975. See 532 P.2d 180.

Review Denied March 18, 1975.

---

Dushoff & Sacks, by Seymour Sacks, and Leroy L. Miller, Phoenix, for appellant.

Bonn & Anderson, by Jeffrey D. Bonn, Phoenix, for appellee.

## OPINION

STEVENS, Judge.

The Phoenix Company (Phoenix) brought an action alleging a breach of a lease against Jay Dushoff (Dushoff). The trial court granted Phoenix's motion for summary judgment. Dushoff claims that the trial court committed error in granting the summary judgment because three affirmative defenses were advanced that were questions of fact and should not have been decided on a motion for summary judgment. Dushoff as an affirmative defense alleged that Phoenix failed to comply with the express provisions of the lease to give notice of default to Dushoff before suit was brought; that Phoenix failed to mitigate its damages as provided in the lease; and that there was an abandonment of the premises by the lessee, Dushoff, coupled with a retaking by the lessor since the Phoenix Company attempted to lease the premises for its own benefit and not for Dushoff's. "In determining whether summary judgment should have been granted, neither the trial court nor the appellate court weigh evidence, and the matters presented are considered in the most favorable aspect to the party opposing the motion." Hall v. Motorists Ins. Corp., 109 Ariz. 334, 336, 509 P.2d 604, 605–606 (1973).

The defendant Jay Dushoff, entered into a written lease with The Phoenix Company for the rental of business offices for a term of three years commencing 1 October 1968. The managing agent of the property in question was The David H. Murdock Development Company (Murdock), a company that manages several other commercial buildings in the Phoenix area. The offices rented by Dushoff were occupied by The Cherokee Construction Company, a corporation in which Dushoff was a 50% owner. The premises were vacated by Cherokee prior to the lease's termination sometime in May 1970. The complaint was filed on 25 January 1971 alleging a breach of contract. Dushoff filed his answer presenting the above-stated affirmative defenses. Subsequently the defendant made a motion for summary judgment for the reason that the plaintiff failed to give the notice of default as required by the lease. The plaintiff responded by alleging that any required notice was in fact given, and if not, then the actions of the defendant made such notice unnecessary and in turn moved for a summary judgment in its favor. After a hearing the trial court granted plaintiff's motion for summary judgment.

"* * * In order for the entry of summary judgment to be appropriate there must be no genuine dispute as to any material fact and only one inference can be drawn from the undisputed material facts, and based on the undisputed material facts the moving party is entitled to judgment as a matter of law, * * * Summary judgment is not appropriate if different inferences can reasonably be drawn from undisputed facts. (Citations omitted)" Lundy v. Prescott Valley, Inc., 110 Ariz. 362, 364, 519 P.2d 61, 63 (1974).

We believe that the instant case is one where, while the material facts are not in

dispute, the inferences to be drawn from these facts are in sharp dispute and therefore the termination of the dispute by granting of a summary judgment is erroneous. The defendant's own motion for a summary judgment was based on the alleged absence of the notice of default as required by the terms of the lease. Phoenix argues that any defect in the notice of default was waived by Dushoff because he failed to plead the lack of a condition precedent specifically in his answer as required by Rule 9(c), Ariz. Rules of Civ. Proc., 16 Ariz.Rev.Stat.Ann. We believe this argument cannot stand since paragraph 3 of Dushoff's affirmative defenses states: "Plaintiff failed to comply with the express and implied promise of notice to the defendant Jay Dushoff * * *." In the alternative, Phoenix urges that any required notice of default was in fact given by letters to Dushoff stating that he is in arrears in the payment of rent and requesting that he bring his account current. Phoenix also contends that Dushoff's letter of 19 October 1970, disclaiming any responsibility from paying the rent made the notice of default futile. Dushoff in turn alleges that the correspondence from Murdock was a simple request for Dushoff to pay the rent and that a notice of default should include notice that the plaintiff considers the contract to be breached and that he will resort to available legal remedies for a solution. Dushoff further claims that the letter disclaiming responsibility from paying the rent did not make the notice of default unnecessary. We believe that the question of whether an adequate notice of default was given is a question of fact and consequently summary judgment should not have been granted.

Dushoff alleges as an affirmative defense that there was an abandonment of the premises and the subsequent retaking by Phoenix because Phoenix attempted to sublease or rerent the premises for its own benefit since the rental it quoted to any prospective tenant was the current rates rather than the rate provided for in the lease. Furthermore, Dushoff claims that

Phoenix made no substantial effort to rerent the premises since the vacant premises were shown to prospective tenants only as a last resort after they were shown other available space managed by Murdock. This question was addressed in Riggs v. Murdock, 10 Ariz.App. 248, 458 P.2d 115 (1969), where the court stated:

"We believe the best rule, and the one based upon the soundest reasoning, is that the question of the tenant's abandonment and the intent of the landlord in accepting that abandonment are questions of fact depending upon all the surrounding circumstances. (Citations omitted)

"Under this principle the trier of facts must look at all the evidence in light of the surrounding circumstances and determine whether the dominion and control exercised by the landlord was for the landlord's own benefit or for the benefit of and on behalf of the original tenant." 10 Ariz.App. at 251, 458 P.2d at 118.

Since the questions of abandonment and the landlord's acceptance are questions of fact, summary judgment should not have been granted.

Dushoff's last contention is that the Phoenix Company was not entitled to summary judgment because it had a duty but failed to mitigate Dushoff's damages following the vacation of the premises by attempting to relet them, for the benefit of Dushoff, to some other prospective tenant.

Three Arizona cases addressed the question of whether the landlord has a duty to mitigate his tenant's damages upon the tenant's abandonment. In Camelback Land and Investment Company v. Phoenix Entertainment Corporation, 2 Ariz.App. 250, 407 P.2d 791 (1965), the lease provided that:

"[I]n the event of any default by tenant * * * [the] Landlord may exercise any one or more of the following remedies.

* * * * * *

"(c) Re-enter the premises and take possession thereof and relet the same for

the account of Tenant for the remainder of the year * * * ."

The Court in that opinion stated that:

"Ordinarily the lessor would have the right to hold the lessee liable for rents due for the balance of the term of the lease, subject to the lessor's duty to attempt to mitigate damages to the credit of lessee." 2 Ariz.App. at 254, 407 P.2d at 795.

In Riggs v. Murdock, 10 Ariz.App. 248, 458 P.2d 115 (1969), the Court stated:

"The doctrine of mitigation of damages is founded primarily in breach of contract actions and the resulting damage therefrom. (Citations omitted) However, as we have seen, the relationship of landlord and tenant is governed by principles of property law as well as contract law. In a lease transaction, moreover, a failure to reenter by a landlord on an abandonment by a tenant is, in essence, an affirmation of the lease, and the resulting cause of action by the landlord is for rentals due under the lease, rather than for damages for breach of contract. It would appear then, that the doctrine of mitigation of damages should not be applied in landlord-tenant transactions." 10 Ariz.App. at 252, 458 P.2d at 119.

In Riggs, supra, the Court distinguished Camelback Land & Investment Co., supra, by stating that there the landlord's contractual duty required him to mitigate the damages. However, the lease provision in question, quoted above, does not support the Court's statement because the lease gives the landlord the option to relet the premises for the benefit of the lessee. The Court in Concannon v. Yewell, 16 Ariz. App. 320, 493 P.2d 122 (1972), asserted that the lessor has the duty to attempt to mitigate damages to the credit of the lessee, citing Camelback Land & Investment Co., supra. This review of the cases demonstrates the diversity of opinion encountered, not only in this jurisdiction but also among our sister states. See generally, Annot. 21 A.L.R.3rd 534 (1968).

We are cognizant of the traditional distinction between contract and property law. The majority of jurisdictions still recognize the theory that the lessee receives an estate of years with a reversion in the owner. Under this theory, the lessee has an interest in land and the lessor need not attempt to mitigate the damages of the lessee since the lessee is abandoning his own property. We believe that whatever historical justification existed for this rule, it is inappropriate in commercial lease transactions today. One need only to look at a modern lease and the contractual aspect of the lease is evident. The lease no longer provides for a simple transfer of the premises from the owner-lessor to the lessee. Now, the lease provides for a rental of the premises for a certain fee and allocates the responsibility for the payment of taxes and for utility bills. Many times the lease provides that the lessor will provide heating, air conditioning and electricity. The lease also gives the lessor many remedies in the event of the breach of lease by the lessee, substantially enlarging the remedies available at common law. In fact, many times, the lease restricts the lessee to utilize the leased premises in furtherance of a specific business and prohibits him from changing his business without written consent from the lessor. In summary then it is evident that the old common law rules regarding leases is the exception rather than the rule.

"It is difficult to find logical reasons sufficient to justify placing such leases in a category separate and distinct from other fields of law which have forbidden a recovery for damages which the plaintiff by reasonable efforts could have avoided." Bernstein v. Seglin, 184 Neb. 673, 677, 171 N.W.2d 247, 250 (1969).

We find further support for our decision from several legislative acts which, to us, indicates the public policy of Arizona to be

in the direction we are taking. The Arizona Legislature has adopted the Uniform Commercial Code as the law of Arizona and one of the governing principles in the code is for both parties to mitigate their respective damages without reference to fault. See generally, Ariz.Rev.Stat.Ann. § 44–2301 et seq. (1967). The Legislature also enacted the Arizona Residential Landlord and Tenant Act, Ariz.Rev.Stat.Ann. § 33–1301 et seq., an act which requires that "[i]f the tenant abandons the dwelling unit, the landlord shall make resonable efforts to rent it at a fair rental." Ariz. Rev.Stat.Ann. § 33–1370 (1973).

We hold that in a commercial lease transaction, if the tenant abandons the premises, the landlord is under a duty to make reasonable efforts to rent it at a fair rental. Reasonableness is to be determined by an examination of the totality of circumstances giving due regard to the efforts of the landlord in renting the abandoned premises, and the number of units he has for rent.

The facts of this case demonstrates to us the dangers encountered in motions for a summary judgment. Both parties moved for a summary judgment, both alleging that there are no disputed questions of fact and that both are entitled to judgment as a matter of law. The above discussion well discloses that even when the facts are not in dispute, different inferences may be drawn from those facts and these inferences will determine the liability of the parties. These inferences are to be drawn by the trier of facts, after all the relevant evidence has been presented and all applicable legal principles are considered.

We hold that under the circumstances it was an error to grant summary judgment and we remand this case to the trial court for proceedings not inconsistent herewith.

Reversed.

DONOFRIO, P. J., and OGG, J., concur.