No. 84-344

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

LIC, INC., a corporation,

        Plaintiff and Respondent,

   -vs-

WILLIAM H. BALTRUSCH,

        Defendant and Appellant.

APPEAL FROM: District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Law Office of Frank Altman, Havre, Montana

    For Respondent:

        Smith & Rice; David G. Rice, Havre, Montana

Submitted on Briefs: Nov. 20, 1984

Decided: January 4, 1985

Filed: JAN 4 - 1985

_Ethel M. Harrison_
_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Defendant, William H. Baltrusch (Baltrusch) appeals the May 23, 1984, order of the Twelfth Judicial District Court, County of Hill, granting plaintiff, LIC, Inc.'s, motion for summary judgment in an action to recover damages from Baltrusch for unpaid rent. We affirm the order of the District Court.

In March 1978, Baltrusch entered into a five-year commercial lease with M&M Enterprises for a store located in the Holiday Village Shopping Center, Havre, Montana. LIC, Inc., succeeded to M&M Enterprises' interest as landlord/lessor in 1980. Baltrusch leased the premises to provide his daughter, Cheryl Allgood, with a location in which to operate a children's clothing store.

Cheryl operated the clothing store from 1978 until the summer of 1982. Prior to August 1982, Cheryl paid to LIC, Inc., monthly rent in the amount of $612.50, common area maintenance of $60.94 and a security payment of $30.63, for a monthly total of $704.07. In addition, merchant dues in the amount of $91.88 were paid quarterly by Cheryl Allgood. Whether or not Cheryl paid the July 1982 rent is disputed.

A going-out-of-business sale was held by Cheryl at the end of August 1982, and the clothing store closed as of September 1, 1982. On September 7, 1982, the manager of Holiday Village Shopping Center entered the premises with his key. The store was virtually empty, with only what he considered to be fixtures remaining. Cheryl Allgood stated in an affidavit that there were numerous items remaining in the store as of September 7, 1982. They consisted of trade fixtures and some personalty.

John Hathaway, Vice President and property manager for LIC, Inc., sent to Baltrusch on September 8, 1982, a letter giving notice of the delinquent rent and Cheryl's failure to pay the rent, a request that Baltrusch pay the rent and a statement that pursuant to Article 25 of the lease agreement, LIC, Inc., would be attempting to find another tenant for the space.

The locks on the premises were changed, per Hathaway's orders, on September 20, 1982. Then, on October 20, 1982, LIC, Inc., brought this action against Baltrusch to recover damages for unpaid rent.

On October 29, 1982, Baltrusch demanded by letter that LIC, Inc., return possession of the premises to him. That demand was denied. Baltrusch filed an answer and counter-complaint on March 18, 1983, alleging that LIC, Inc., was in illegal and unlawful detainer of the premises and requesting treble damages. Counter motions for summary judgment and supporting affidavits were filed by both sides. A hearing was held on those motions February 17, 1984. LIC, Inc.'s, motion was granted May 23, 1984, and judgment was entered for LIC, Inc., in the amount of the rent for the remaining lease term, $10,678.82 plus $1,291.99 in attorney's fees.

On appeal, Baltrusch presents two major issues for review:

1. Whether the District Court erred in granting LIC, Inc.'s, motion for summary judgment for the unpaid rent; and

2. Whether the District Court erred in denying Baltrusch's summary judgment motion for forcible or unlawful detainer.

Specifically, Baltrusch argues that LIC, Inc., resumed possession of the premises on September 7, 1982; that

3

Baltrusch had not abandoned the premises at that time; and that, therefore, LIC, Inc., was required to give Baltrusch three days' notice prior to repossessing, pursuant to § 70-27-106, MCA. Since LIC, Inc., failed to give notice, it was in unlawful possession of the premises. Thus, when LIC, Inc., refused Baltrusch's demand to return possession of the premises to him, it was guilty of forcible or unlawful detainer and Baltrusch is entitled to treble damages. See §§ 70-27-103 and 70-27-206, MCA.

We agree with Baltrusch's contention that there is little, if any, evidence to show abandonment of the premises. Abandonment is an absolute relinquishment of premises by a tenant. It consists of both an act or omission and an intent to abandon. Tuschoff v. Westover (Wash. 1964), 395 P.2d 630, 632. A sub-tenant's vacation of the premises in no way indicates an intent on the part of the tenant to abandon. Riggs v. Murdock (Ariz. 1969), 458 P.2d 115, 118-119. However, a finding of abandonment is not necessary. The lease itself is dispositive.

Article 25 of the subject lease states:

"LESSEE OBLIGATED FOR RENTS

"It is mutually agreed that in case said premises are left vacant and/or any part of the rent herein reserved be due and unpaid, then the Lessor may, without in anyway being obliged so to do, and without terminating this lease, retake possession of said premises and rent the same for such rent, and upon such conditions as the Lessor may think best, making such changes and repairs as may be required, giving credit for the amount of rent so received less all expenses of such changes and repairs and said Lessee shall be liable for the balance of the rent herein reserved until the expiration of this lease. Lessor, may, at his option terminate this lease if said premises are left closed for business or vacant by the Lessee for longer than five (5) days. Such termination, however, does not prejudice Lessor's right to recover the balance of any rental or other payments then due or to pursue any other remedy hereunder or by law provided. Any property of Lessee remaining in the leased premises, maybe (sic) removed

4

therefrom by the Lessor and stored at Lessee's expense." (emphasis supplied).

The store was both closed for business and vacant for at least five days prior to September 7, 1982. The rent had not been paid for at least two months. Thus, LIC, Inc., was entitled, pursuant to its lease with Baltrusch, to reenter and relet the premises.

Baltrusch further contends that he was not given proper notice of LIC, Inc.'s, intent to reenter the premises. We cannot agree. Section 70-27-106, MCA, states:

"Reentry - when and how to be made. Whenever the right of reentry is given to the grantor or lessor in any grant or lease or otherwise, such reentry may be made at any time after the right has accrued, upon 3 days' notice, as provided in this chapter."

LIC, Inc.'s, right to reenter accrued no later than September 6, 1982, five days after the store was vacated. A letter was mailed to Baltrusch on September 8, 1982, detailing the amount of rent owed and LIC, Inc.'s, intention to find a new tenant. Mailing of the letter was proper under Article 34 of the lease, which provides that all notices shall be mailed to the parties at their respective post office box numbers. The contents of the letter left no doubt regarding either Baltrusch's position or LIC, Inc.'s, demands.

Baltrusch apparently made no effort to bring the rent payments current and LIC, Inc., took legal possession of the premises on September 20, 1982, more than three days after giving the notice required by statute.

Baltrusch argues that LIC, Inc., actually took possession of the premises on September 7, 1982. We cannot agree. On September 7, the shopping center's manager used his key to enter the premises only to determine for John Hathaway the use of the premises by Baltrusch. It was not until September 20, 1982, that LIC, Inc., actually

5

repossessed the premises by changing the locks.  Since LIC, Inc., legally repossessed the premises, there is no basis for either a forcible or an unlawful detainer action.  The trial court properly denied Baltrusch's motion for summary judgment on that issue.

Baltrusch breached his lease agreement with LIC, Inc., both when he failed to pay several months rent and when he allowed the premises to remain vacant for more than five days.  The order of the trial court awarding LIC, Inc., damages in the amount of the rent remaining on the lease and attorney's fees is affirmed.

Justice

We concur:

Chief Justice

Justices

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent to that portion of the majority opinion affirming the order of the trial court granting summary judgment to the plaintiff.

The trial judge found, in his finding of fact no. 11, as follows:

> "That since prior to September 1, 1982, and thereafter, the Defendant has not occupied or used the premises so as to be deemed in possession and in fact had abandoned them prior to the Plaintiff's initial entry." (Emphasis added.)

The majority has now found that the finding of abandonment was erroneous but that such a finding was not necessary and that the lease itself is "dispositive."

I disagree with that position on the basis that, if there was no abandonment by the defendant, then there remains a factual dispute as to whether the required notice, under the statute or under the lease, was given by the plaintiff. The majority cites Article 34 of the lease as providing that mailed notice is appropriate. I would agree if the affidavits, admissions or answers to interrogatories showed that the mailed notice was sent by registered mail, as required by Article 34, or if there was proof of actual receipt of legally sufficient notice.

The majority goes on to state: "Thus, LIC, Inc., was entitled, pursuant to its lease with Baltrusch, to terminate that lease and to reenter the premises." (Emphasis added.) Although the judgment for plaintiff is being affirmed, that statement by the majority will surprise counsel for plaintiff who clearly took the position that the plaintiff was not

7

terminating the lease. During oral argument, counsel for plaintiff stated as follows:

> "And the court can see that the plaintiff was not willing to fall into that trap at that time and indicate that these premises were being repossessed. Probably for the fear that <u>we are not talking about a termination of this lease.</u> Article 25 has a couple of different possibilites. One is retake the property, hold it, continue to hold the tenant liable for rent. Another one is to terminate the lease by some action, and cut off the defendant's requirement or the tenant's requirement to pay rent. <u>We were certainly not going to fall into that situation and have it alleged that we have terminated the lease.</u>" (Emphasis added.)

In view of plaintiff's answer to defendant's interogatory that the plaintiff "took control of [the premises] on or about September 7, 1982" and the conflicting statements in his affidavits, I would remand for trial on the issue of whether the defendant is liable for rents due after September 7, 1982.

_K. C. Gulbrandson._
Justice

8