714 P.2d 459

**Monroe J. WINGATE, Petitioner,**

v.

**Hon. Harry GIN, Judge of the Pima County Superior Court, Division XIV, Respondent,**

and

**FAST FOTO, INC., an Arizona corporation; Douglas C. Sandahl, and Peggy A. Sandahl, husband and wife, Real Parties In Interest.**

**No. 2 CA–SA 0316.**

Court of Appeals of Arizona, Division 2, Department A.

Dec. 26, 1985.

Rehearing Denied Feb. 4, 1986.

Jones, Dickerman, Nuckolls, Edwards & Smith, P.C. by John Gabroy and Lyle D. Aldridge, Tucson, for petitioner.

Gust, Rosenfeld, Divelbess & Henderson by Fred Cole and James B. Wright, Phoenix, for real parties in interest.

## OPINION

HOWARD, Judge.

Petitioner challenges the respondent judge's refusal to grant his motion for summary judgment. Since petitioner has no plain, speedy and adequate remedy by appeal, and because our granting relief will terminate this litigation, we assume jurisdiction. *Lim v. Superior Court*, 126 Ariz. 481, 616 P.2d 941 (App.1980).

Petitioner is the plaintiff in a pending superior court action, and the real parties in interest, Fast Foto, Inc., and the Sandahls, are the defendants. On August 6, 1981, Fast Foto executed a standard shopping center lease agreement for approximately 1,750 square feet of commercial space in Broadway East Plaza Shopping Center located in Tucson. Wingate is the owner and lessor of the premises. Douglas and Peggy Sandahl signed the lease agreement on behalf of Fast Foto, Inc., as the corporation's president and secretary, respectively. In addition, a "Guarantee of Lease" was executed by both of the Sandahls wherein they individually obligated

themselves, jointly and severally, to unconditionally guarantee full performance of the corporate lease as primary obligors and to pay all costs, expenses and attorney's fees incurred by Wingate in any action brought to enforce the lease terms.

The lease was for a period of five years, commencing October 5, 1981. Fast Foto agreed to pay a minimum monthly rent of $1,093.75 plus its pro rata share of taxes and common area maintenance charges. By letter dated October 1, 1984, Fast Foto notified Wingate that it had vacated the premises on September 28, requested that the $1,093.75 security deposit be applied to its unpaid rent for the month of September, and asked Wingate to "proceed to find a new tenant for the space." On November 6, Wingate wrote a letter to his leasing agent in Tucson requesting progress reports on her attempts to relet the premises and stating that "we want to do everything possible to lease this space to a new tenant." Citing the applicable lease provision, Wingate's attorneys sent written notice to Fast Foto that Wingate had elected to refuse to accept Fast Foto's surrender of the lease and that Fast Foto was in breach and would be held responsible for all unpaid rent and other charges pursuant to the lease terms.

Wingate filed his complaint on January 16, 1985, against the corporate lessee, Fast Foto, Inc., and the individual guarantors, Douglas and Peggy Sandahl, to recover the rents and charges owing pursuant to the lease agreement for the months that the premises have been unoccupied as well as for future rents through the end of the term. Wingate's motion for summary judgment was argued to the respondent judge and denied by minute entry dated June 17, 1985, wherein the court stated:

"It appears that there is a material issue of fact for a trier of fact as to whether or not Plaintiff made reasonable efforts to relet the property in question. Therefore, Plaintiff's Motion for Summary Judgment is DENIED."

The issue presented by the petitioner in this special action is whether the question

of the reasonableness of a lessor's efforts to relet the premises must always be answered by the trier of fact.[1] We do not believe so, and we hold that summary judgment should have been granted on that issue.

The parties' lease agreement provides that, in the event of the tenant's breach, the landlord may either terminate the lease or, without terminating, relet the premises. In the latter event, the rents received are to be applied to the tenant's account and the tenant is required to pay any account deficiencies to the landlord on a monthly basis. The lease agreement further provides that all sums not paid when due shall bear interest.

The subject premises have remained vacant since Fast Foto closed its doors in September 1983. The parties do not dispute the facts as stated above. The defendants, however, argue that (1) Wingate did not make reasonable efforts to relet the premises, and (2) they are entitled to a resolution of that issue at a trial on the merits.

■ The subject lease agreement contains certain commercial landlord and tenant standards prescribed by law. Where a tenant abandons the leased premises, the landlord may refuse to accept surrender of the lease and may recover possession. The law imposes a duty upon the landlord in that situation to make reasonable efforts to relet the space at a fair rental and any such rentals received must be applied against the amounts owing by the tenant for the remaining term of the lease. *Roosen v. Schaffer*, 127 Ariz. 346, 349, 621 P.2d 33, 36 (App.1980). Where, as in this case, a written lease agreement allows a landlord to relet the premises in the event of the tenant's default, the law imposes a duty on the landlord to make reasonable efforts to relet at a fair rental.

Wingate submitted to the trial court his own affidavit and the affidavits of his leasing agent in support of his motion for summary judgment. Upon receipt of Fast Foto's letter notifying him that it had abandoned the premises, Wingate contacted his leasing agent/realtor and urged her to be as diligent as possible in securing a replacement tenant. His agent made contact with numerous tenants; the vacancy was advertised in a local newspaper and the premises were shown to various prospective tenants. In addition, advertising literature, which included color photographs of the shopping center, was distributed through the mail to all photo-finishing businesses listed in the Tucson telephone directory yellow pages, and general mailings regarding all vacancies in the center, including the subject space, were made to other prospective tenants. Furthermore, the affidavit of Wingate's agent stated that the asking rental rate for the vacancy was a fair rental.

Defendants filed the affidavits of Fast Foto's vice-president and district manager, both stating that they had inspected the vacant space from the outside and had seen no indication that the premises were available for lease. Defendants argue that Wingate's decision not to place a "for lease" sign on or around the space creates an issue of fact as to whether Wingate's efforts to relet the space were reasonable. We do not agree.

Defendants' affidavits do not controvert the affidavits of Wingate's realtor regarding her efforts to relet the premises and the reasonableness of the asking rental price. Defendants have not presented the testimony or affidavit of a realtor, leasing agent, or other person knowledgeable in the field to dispute the reasonableness of Wingate's reletting efforts or the reasonableness of the asking rental amount. The record is overwhelming in support of Wingate's position and completely devoid of any proof to the contrary.

■ While a landlord has a duty to make efforts to rent the abandoned premises at a fair rental, the law only requires that those efforts be "reasonable," not heroic. *Dushoff v. Phoenix Company*, 23

---

1. This case does not involve a dwelling unit. In leases of residential units, the lessor's duty to relet is governed by statute. See A.R.S. § 33–1370.

Ariz.App. 238, 239, 532 P.2d 180, 181 (1975), reaffirming and clarifying 22 Ariz. App. 445, 528 P.2d 637 (1974). The affidavit of Wingate's leasing agent establishes that reletting efforts, albeit unsuccessful, have been reasonably made. Wingate's business judgment not to place a sign on every vacant space in the shopping center does not create a question of fact, nor have defendants presented any affidavits which challenge the reasonableness of that decision.

Rule 56(e), Rules of Civil Procedure, 16 A.R.S., requires that affidavits opposing summary judgment "set forth specific facts showing that there is a genuine issue for trial." In order to create a genuine fact question, it was incumbent upon the defendants to show that the reletting efforts and the asking rental price were not reasonable in this community. Nothing in the record suggests that the efforts of Wingate's agent were insufficient or that the asking rental was unreasonably high. By showing only the failure to place a sign on the premises, defendants have not satisfied their burden under Rule 56(e) to controvert the affidavits. See *Prevo v. McGinnis*, 142 Ariz. 298, 301, 689 P.2d 557, 560 (App.1984).

Defendants argue that a factual question is raised by Wingate's statement approximately nine months prior to the abandonment that he would make no attempts to relet the premises because he had so many vacancies of his own at that time. In early 1983, Fast Foto had informed Wingate that it wished to vacate the premises and requested that he try to relet its space. Wingate's statement in that context does not negate the reasonableness of the reletting efforts which commenced when Fast Foto abandoned the premises.

Defendants also argue that factual issues arise from an alleged five-week delay between their abandonment of the premises and Wingate's attempts to relet, as well as the fact that other vacancies in the shopping center have been filled. No affidavits were presented to support defendants' conclusory allegations of unreasonableness.[2]

■ Defendants rely on *Dushoff v. Phoenix Company*, supra, where the court stated:

> "We hold that in a commercial lease transaction, if the tenant abandons the premises, the landlord is under a duty to make reasonable efforts to rent it at a fair rental. Reasonableness is to be determined by an examination of the totality of circumstances giving due regard to the efforts of the landlord in renting the abandoned premises, and the number of units he has for rent." 22 Ariz.App. at 449, 528 P.2d at 641.

The court in that case reversed summary judgment, finding that the questions of abandonment and acceptance presented issues for the trier of fact. In *Dushoff*, the tenant claimed that the vacant premises were only shown to prospective tenants "as a last resort" after all other available property had been shown. 22 Ariz.App. at 447, 528 P.2d at 639. In this case, defendants have made no such showing. We do not believe that the determination of reasonableness required by *Dushoff* from the "totality of circumstances" prohibits summary disposition. In cases where, as here, the landlord has established reasonable efforts to relet at a fair rental and where the facts presented are not controverted by the tenant with specific facts showing a genuine issue, summary judgment is appropriate.

■ Having determined that summary judgment should have been granted in Wingate's favor, we must turn to the question whether Wingate is entitled to recover all rent due, past and future, under the terms of the parties' written lease agreement. The rental period was five years, commencing October 5, 1981. The contract term ends on October 4, 1986, in approximately 10 months. Wingate is, without question, entitled to summary judgment for all amounts due under the lease agreement

---

**2.** Nothing was presented to even suggest that such a delay was unreasonable or that potential lessees were "steered away" from the subject premises.

through January 16, 1985, the date the complaint was filed. Wingate also seeks summary judgment to recover the future rents due through the end of the lease term.

The written lease agreement between Wingate and Fast Foto allows Wingate to relet the premises without terminating the lease and to apply the rents received to Fast Foto's account, with any excess to be held and "applied in payment of future rent as the same may become due and payable...." The lease further provides:

"Notwithstanding any such re-letting without termination, Landlord may at any time after Tenant's default elect to terminate this lease and in addition to any other remedy it may have, it may recover from Tenant all damages it may incur by reason of such default, including but not limited to, accruing rent and the cost of recovering the Premises, and including the worth at the time of such termination of the excess, if any, of the amount of rent and charges equivalent to rent reserved in this lease for the remainder of the stated term over the then reasonable rental value of the Premises for the remainder of the stated term."

Wingate's complaint sought recovery of all rent and charges due under the lease. In his motion for summary judgment, Wingate sought an award of accrued rent as well as all future rent reserved through the term of the lease.

Under the written lease, Wingate was entitled either (1) to wait for the end of the lease term and recover any amounts found to be owing at that time (subject to the requirement that he make reasonable reletting efforts and subject to the tenant's entitlement to an offset for rents received), or (2) to elect to terminate the lease and recover his damages upon termination. With the filing of his complaint, seeking judgment for all rents and charges, past and future, Wingate elected to terminate the lease pursuant to the provision quoted above. See *Higgins v. Kittleson*, 1 Ariz. App. 244, 401 P.2d 412 (1965); *Carpenter v. Riddle*, 527 P.2d 592 (Okl.1974); *United States National Bank of Oregon, v. Homeland, Inc.*, 291 Or. 374, 631 P.2d 761 (1981).

The record, as presented, is devoid of affidavits or other evidence regarding the issue of damages. Wingate is entitled to recover accrued rents and charges up to and including January 16, 1985, along with the difference, if any, between the future rents due under the lease and the reasonable rental value of the premises. Upon submission of the appropriate affidavits or other evidence, it is for the trial judge to determine whether summary judgment is proper on the damages issues.

We hold that Wingate, by electing to seek judgment for all damages, past and future, at this time, has elected to terminate the lease pursuant to its terms. The lease is terminated as of January 16, 1985.

The order denying plaintiff's motion for summary judgment is hereby vacated and this matter is remanded to the trial court for proceedings consistent with this opinion.

FERNANDEZ and LACAGNINA, JJ., concur.