NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

―――――――――――――

TRADE PRINTERS, INC.,
*Plaintiff/Appellee*,

v.

PDF PRINT COMMUNICATIONS, INC.,
*Defendant/Appellant*.

No. 1 CA-CV 21-0356
FILED 7-21-2022

―――――――――――――

Appeal from the Superior Court in Maricopa County
No. CV2019-010079
The Honorable Danielle J. Viola, Judge

**REVERSED AND REMANDED**

―――――――――――――

COUNSEL

Iannitelli Marcolini, PC, Phoenix
By Claudio Eduardo Iannitelli, Jason Kelly Thomas
*Counsel for Plaintiff/Appellee*

Blythe Grace, PLLC, Phoenix
By Robert S. Reder
*Co-Counsel for Defendant/Appellant*

Levitt Law, APC, Seal Beach, CA
By Scott L. Levitt
*Co-Counsel for Defendant/Appellant*

Schiffer & Buus, APC, Costa Mesa, CA
By Eric Schiffer
*Co-Counsel for Defendant/Appellant*

_____

## MEMORANDUM DECISION

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge Jennifer M. Perkins joined.

_____

**W E I N Z W E I G**, Judge:

**¶1**        This is an appeal between two parties to an imprecise contract, each of whom extracts a reasonable yet incompatible meaning from their favorite parts. The superior court found one interpretation more persuasive and entered summary judgment for its proponent. That was error. When the words of a contract are susceptible to more than one reasonable interpretation, the court must then examine parol evidence of the parties' intent. And if the ambiguity lingers, a jury must hear the evidence. We reverse and remand.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        PDF Print Communications, Inc. ("Buyer") is a printing company located in California. Trade Printers, Inc. ("Seller") is a business forms distributor located in Arizona.

### I.        Asset Purchase Contract

**¶3**        In June 2018, after months of negotiations, Buyer and Seller entered an Asset Purchase Contract ("Contract"). According to the Contract, Buyer agreed to purchase "certain assets of Seller used in connection with its business," comprising "[a]ll tangible assets used in the operation of the Business," including "items of inventory" like "raw materials, stock-in-trade, work-in-process, and finished goods."

        A.        Purchase Price; Allocation of Price

**¶4**        The purchase price had two parts, including $165,000 on closing, "plus an amount equal to the value of inventory of goods and supplies owned by Seller on the date of Closing ('Inventory')." The inventory payment itself had two parts: $25,000 at closing, and "the balance monthly for a period not to exceed six (6) months *__as used__* beginning on the fifteenth day of the month following the month in which the Closing occurs with a final payment [six months after closing] of the remaining unpaid balance." Formed just three weeks before the closing date, the Contract identified "the value of the Inventory" as $240,693.

¶5         Attached to the Contract was a chart named "Allocation of Purchase Price," which broke the price into five separate asset classes, including two inventory classes (Part #1 and Part #2).   For the bulk of inventory (Part #2), the chart listed a variable price and stated: "Balance to be paid as used."   As highlighted in this screenshot, that variable price ranged from a "sure" price to a "potential[]" price:

**Physical Assets**

| | |
|---|---|
| Class I (Cash & Cash Equivalents) | $0.00 |
| Class II (Other Liquid Assets) | $0.00 |
| Class III (Accounts Receivable) | $0.00 |
| Class IV (Inventory-Part #1) | $25,000 (Paid at Closing) |
| Class IV (Inventory-Part #2) | ~$215,693 (Balance to be paid as used) |
| Class V (Fixtures, Equipment, etc.) | $130,000 |
| **Total Physical Assets** | $155,000 sure (~$370,693 potentially) |

Contract, Ex. 3.02 (highlights supplied).   According to the chart, the difference between the "sure" and "potential[]" prices was $215,693.

### B.     Lease Agreement

¶6         The Contract included an "ancillary" one-paragraph lease agreement for Buyer "to remain at [Seller's office] . . . for a period not to exceed six months" at $10,000 per month, and "allow[ed] time for production transition and removal of equipment."  Buyer moved out after four months, however, and stopped paying rent.  Buyer also left some of its equipment behind.

## II.     This Lawsuit

¶7         This lawsuit followed in June 2019.  Seller sued Buyer for breach of contract and more, alleging that Buyer never paid for all the inventory as valued on closing, and also owed three months' unpaid rent.  Buyer countersued for breach of contract and more, alleging it had performed under the Contract.

¶8         Seller and Buyer later moved for summary judgment on the contract claims.   The parties disagreed over the terms of purchase for inventory.  Each offered a distinct and irreconcilable interpretation of the relevant language.  Seller argued that Buyer was required to pay for all the inventory under the Contract, whether or not Buyer used the inventory in the first six months.   Buyer argued it was only required to pay for the

inventory it used in the first six months, plus $25,000 at closing. Much of the summary judgment arguments focused on parol evidence and whether the court should have considered such evidence at summary judgment. Beyond that, the parties disagreed on whether Buyer had to pay more rent and how much.

**¶9**        The superior court heard oral argument and later entered summary judgment for Seller on its breach of contract claims, awarding Seller its damages and attorney fees. The court found the Contract's "inventory payment provision" was "unambiguous," and required a "fixed" price from Buyer for "the total amount of inventory . . . as it was used for a six-month period[,] but the remaining unpaid balance was due January 15, 2019." The court thus declined to consider parol evidence, reasoning it would represent "an additional term" not found in the Contract. It also found Buyer responsible for unpaid rent because "[Buyer] failed to return the property to a clean, ready to lease condition until approximately January 30, 2019." Buyer timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶10**        Buyer argues the superior court erroneously granted summary judgment to Seller because the inventory sales price was ambiguous under the contract, and Buyer presented no evidence that it mitigated damages upon breach of the lease agreement. We consider each argument below.

**¶11**        We review de novo the superior court's grant of summary judgment, *Jackson v. Eagle KMC LLC*, 245 Ariz. 544, 545, ¶ 7 (2019), construing the facts in the light most favorable to the non-moving party, *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 14 (App. 2012). We likewise review de novo an issue of contract interpretation. *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 15 (App. 2010).

**¶12**        Summary judgment is appropriate when "the moving party shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). For plaintiffs to secure summary judgment, they must prove the elements of their claim based on "undisputed admissible evidence that would compel any reasonable juror to find in [their] favor." *Wells Fargo Bank*, 231 Ariz. at 213, ¶ 18 (citation omitted). "[T]he mere absence of a genuine dispute of material fact does not automatically entitle a plaintiff to [summary] judgment." *Id.* at ¶ 16.

¶13        Buyer and Seller each asserted a breach of contract claim, which has three elements: (1) a contract, (2) breach, and (3) damages. *First Am. Title Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 353, ¶ 22 (2016). The second and third elements are contested here.

## I.        Inventory Purchase Price (Contract Interpretation)

¶14        When interpreting a contract, this court aims to determine and enforce the parties' intent upon entering the contract, *see Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152–53 (1993), first looking to "the plain meaning of the words" in the contract as a whole, *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). Our supreme court has warned judges not to indulge "the often irresistible temptation to automatically interpret contract language as he or she would understand the words" because "what appears plain and clear to one judge may not be so plain to another." *Taylor*, 175 Ariz. at 152–53 ("This natural tendency is sometimes disguised in the judge's ruling that contract language is 'unambiguous.'") (citation omitted).

¶15        The first issue on appeal is whether the Contract is ambiguous. That is a question of law for the court. *Taylor*, 175 Ariz. at 158–59. A contract is ambiguous under Arizona law when its terms are reasonably susceptible to more than one interpretation. *Id*. at 154, 158–59.

¶16        The court may resolve the issue at summary judgment if a contract is unambiguous. *See Leikvold v. Valley View Cmty. Hosp.*, 141 Ariz. 544, 548 (1984). If a contract is ambiguous, however, the court then turns to parol or external evidence of intent. *See In re Est. of Lamparella*, 210 Ariz. 246, 250, ¶ 22 (App. 2005).

¶17        At that point, the court has another chance to enter summary judgment, but only if the parol evidence was so favorable to one party that no reasonable person could find against that party. *See, e.g., Mason v. Telefunken Semiconductors Am., LLC*, 797 F.3d 33, 38 (1st Cir. 2015) ("If the extrinsic evidence is so one-sided that no reasonable person could decide the contrary, the meaning of the language becomes evident and the erstwhile ambiguity will not preclude summary judgment.") (citation omitted).

¶18        But if the contract remains unclear after considering parol evidence, there must be a trial. *See State v. Mabery Ranch, Co., LLC*, 216 Ariz. 233, 239, ¶ 23 (App. 2007) ("Where a contract's language is reasonably susceptible to more than one meaning, the interpretation of the contract should be submitted to the jury.").

**¶19** Against that procedural backdrop, we turn here and ask whether the Contract is susceptible to more than one reasonable interpretation. Seller insists it is not. Seller contends the Contract unambiguously required Buyer to purchase Seller's complete inventory for a single price as valued at closing. For that interpretation, Seller stresses its favorite parts of the Contract. It points to Section 3.01(a), which required Buyer to pay a "purchase price" of $165,000 "<u>plus</u> an amount equal to the value of inventory of goods and supplies owned by Seller on the date of Closing." It touts Section 4.01(B), which required Buyer to make a final payment after six months "of the remaining unpaid balance," implying that more would be due. Last, it agrees with the superior court, which held that Section 1.01(a) required Buyer to purchase the inventory for the "potential[]" price in Schedule 3.01(a).

**¶20** That is a reasonable interpretation. It's just not the only reasonable interpretation.

**¶21** Buyer contends the Contract is reasonably susceptible to a second interpretation—that Buyer only agreed to purchase the inventory it actually used in the first six months. For that interpretation, Buyer, like Seller, presses its favorite parts of the Contract. It points to the "as-used" language in Section 4.01(b) and Exhibit 3.02. Buyer also relied on Exhibit 3.02 to "show that the inventory amount allocated to the purchase price was an amount to be determined *as used*, rather than a flat fee amount for inventory, irrespective of use."

**¶22** And that, too, is a reasonable interpretation. Without the benefit of parol evidence, the Contract is ambiguous because the inventory purchase price is susceptible to either of two dueling reasonable interpretations. As a result, summary judgment was inappropriate, and the court should have accepted and reviewed any parol evidence to determine the parties' intent. *See Lamparella*, 210 Ariz. at 250, ¶ 22.

**¶23** Our conclusion is confirmed by two more points. First, the superior court never even mentioned the "sure/potentially" contract language or examined its meaning. And second, at oral argument before this court, Seller argued that summary judgment was proper because all the parol evidence supported its interpretation, and Buyer presented no evidence to support Buyer's interpretation. This confusion over what was or was not even considered at summary judgment just confirms our decision to reverse and remand.

¶24      We reverse and remand for the court to consider any parol evidence.  If that evidence is so favorable to one party's position that no reasonable person could find otherwise, the court may enter summary judgment.  *Mason*, 797 F.3d at 38.  But if the contract still yields two reasonable interpretations, even with the benefit of parol evidence, the case must proceed to trial. *See Mabery Ranch,* 216 Ariz. at 239, ¶ 23.

## II.      Forfeiture

¶25      The superior court also reasoned that summary judgment was required because Buyer's interpretation would create a forfeiture.  But we are unsure whether or how forfeiture principles would apply here.  *See Oracle Foothills Ests., Inc. v. Smira, Oliver & Assocs.*, 146 Ariz. 529, 531 (App. 1985) ("Even though the courts abhor a forfeiture, a valid contract will be enforced according to its terms.").  When interpreting a contract, we strive to enforce the parties' intent, and the court has yet to consider parol evidence on that issue.

## III.      Disputed Inventory Value

¶26      The superior court found "[t]here is no dispute that the agreed upon value [of Seller's inventory on closing] [w]as $245,281.23."  This was error because the valuation was disputed.  Seller alleged in its supporting statement of facts that the "Inventory Amount was $245,281.23" upon closing.  Buyer then "[c]ontested" this allegation in its opposing statement of facts.  Buyer alleged the value of inventory on closing was "~215,693," citing the "allocation of purchase price" used in Exhibit 3.01. Summary judgment was thus improper.  Ariz. R. Civ. P. 56(a).

## IV.      Damages: Unpaid Rent

¶27      Lastly, Buyer contends the court erroneously granted Seller summary judgment on rent because a question of fact remained on whether Seller mitigated its damages.  *See Next Gen Cap., LLC v. Consumer Lending Assocs., LLC*, 234 Ariz. 9, 13, ¶ 16 (App. 2013) (breaching party has burden to show failure to mitigate).  Buyer relies on evidence, in particular, that Seller waited three months to act after learning that Buyer had left the premises and stopped paying rent.

¶28      We agree the superior court should have determined whether Seller took reasonable measures to mitigate its damages.  "A basic principle of the law of damages is that one who claims to have been injured by a breach of contract must use reasonable means to avoid or minimize the

7

damages resulting from the breach." *W. Pinal Fam. Health Ctr., Inc. v. McBryde*, 162 Ariz. 546, 548 (App. 1989).

**¶29** Moreover, the lease agreement only required Buyer to pay $10,000 in rent per month for the right to remain on the premises for up to six months. And Buyer paid rent for each of the four months it used the property. Because the proper calculation of damages "depend[ed] upon factual resolutions, which the record does not reflect as capable of being resolved as a matter of law," summary judgment was inappropriate. *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 196 (App. 1994); *see also Dushoff v. Phoenix Co.*, 22 Ariz. App. 445, 446–47 (1974) (summary judgment improper in action by landlord against tenant where questions of fact existed on whether adequate notice of default was given, as to abandonment, and on landlord's duty to mitigate damages).

## CONCLUSION

**¶30** We reverse the superior court's entry of summary judgment to Seller, vacate its award of attorney fees and remand for further proceedings consistent with this opinion. Both parties request their attorney fees on appeal, which we deny in our discretion, but we grant Buyer its reasonable costs on appeal contingent upon Buyer's compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA