572

522 P.2d 37

Karl F. ABEL and Enid M. Abel, his wife, and Norbert J. Abel and Burl N. Abel, his wife; and Transamerica Title Insurance Co., Appellants,

v.

H. D. LAFFERTY, successor to Leo A. Benedict, Maricopa County Treasurer and ex-officio Tax Collector; Kenneth Kunes, Maricopa County Assessor; Maricopa County, a body politic; B. W. Burns, Robert Stark and Henry Haws, the Maricopa County Board of Supervisors, and Rhea Woodall, its Clerk; the State of Arizona, a body politic; and L. Waldo Dewitt, John M. Hazlett and Bob Kennedy, the State Tax Commission of Arizona, Appellees.

No. I CA–CIV 1995.

Court of Appeals of Arizona,
Division 1,
Department B.

May 14, 1974.
Rehearing Denied June 21, 1974.
Review Denied July 9, 1974.

Lewis & Roca, by John P. Frank and Paul G. Ulrich, Phoenix, for appellants.

Beer & Kalyna, by Olgerd W. Kalyna, Phoenix, for appellees.

HAIRE, Presiding Judge.

On October 8, 1970, the appellants Abel filed their complaint in the Maricopa County Superior Court seeking a refund of certain real property taxes assessed against a specific parcel of real property owned by them at the time of the assessments here questioned. After a trial to the court, the trial judge entered judgment for the appellee taxing authorities, denying the claim for a refund.

In essence, the Abels sought a refund of that portion of the tax which was occasioned by assessments for improvements which were not in fact located on the specific parcel of real estate against which the taxes were assessed. Tacitly recognizing the general validity of the premise that taxing authorities must tax improvements to the parcel of real property on which the improvements are located, the taxing authorities advanced several arguments why, under the peculiar facts of this case, the

Abels should not be allowed to obtain a refund.

The principal facts were the subject of a pretrial stipulation, and, as pertinent to this appeal, show that the Abels owned a large tract of land about 25 to 30 miles west of Phoenix, Arizona which they farmed until 1964. For tax purposes, the Maricopa County Assessor had divided the portion of the whole tract with which we are concerned into five parcels referred to herein as Parcels 4, 5, 6, 7 and 8.[1]

In January 1964, the Abels leased their land to Arizona Harness Raceway, Inc., which later changed its name to Arizona-New York Harness Racing, Inc. The lease required that the lessee pay all *ad valorem* taxes levied against the property. The lessee then constructed a harness racing facility on which the First National Bank of Arizona held the mortgage. The grandstand and the improvements pertinent to the questions raised on this appeal were actually located on parcel 5. For the year 1965 these improvements, costing in excess of $7,000,000 were assessed at the amount of $762,775 and, for some unknown reason, that amount was assessed against parcel 4 rather than against parcel 5. However, apparently everyone was happy with both the total amount and the mechanics of the assessments against the five parcels constituting the harness racing facility, since the taxing authorities received no complaint and the full amount of the 1965 taxes were paid without protest.

The same assessments were carried forward for the 1966 and 1967 tax years. The 1966 and 1967 tax bills were sent to the Abels in due course by the county treasurer and were forwarded by them to their lessee. The lessee, however, had initiated Chapter XI arrangement proceedings in October 1966, and in early 1967 ceased operation of the racetrack because of financial difficulties. The taxes had not been paid for the first half of 1966, or thereafter. In order to protect its mortgage security, the First National Bank paid the first half of 1966 taxes in November 1966, after they had become delinquent. The first half 1966 taxes on parcel 4 amounted to $37,271.62.

In 1968, the Abels discovered that the property taxes for the second half of 1966 and for 1967 had not been paid and were therefore a lien on their fee land. The Abels and their attorney met with the then asesssor and his deputy to inquire about changing the method and manner of the assessments of the parcels here involved. The Abels desired to work out some method by which the majority of their land, undeveloped except as farm land, could be relieved of the burden of possible tax liens for improvements comprising the racetrack facility. Three proposals or inquiries were made by them:

1. Could the assessor somehow "unsecure" the lessee's improvements from the leased land owned by the Abels and transfer the taxes then due for the last half of 1966 and 1967 and future years to the unsecured tax rolls? The assessor stated that he could not and would not do so.

2. Could the assessor re-parcel the Abels' lands to break out from the larger parcels a small parcel on which the grandstand facility was constructed and to which any tax lien would attach in the future? It was hoped that by this proposal the majority of the Abels' lands would be freed of the tax burden caused by the costly, but now nonoperating racetrack facility. The assessor agreed to do so and there was created out of parcel 5 a new tax parcel, No. 502–38–5B comprising approximately 20 acres of land beneath and surrounding the grandstand facility. The remainder of parcel 5 became parcel 5A. This re-parceling became effective for 1968 and 1969 taxes.

3. Could the assessor in effect remove the lien for real property taxes for the

---

1. The actual Maricopa County tax parcel numbers respectively were: 502–38–4, 502–38–5, 502–38–6, 502–38–7 and 502–38–8.

second half of 1966 and 1967 from parcel 4 and transfer the lien to the new parcel 5B? The assessor stated that he was unable to and refused to do so.

Thereafter, in 1969, the lessee exercised an option to purchase the portion of the Abels' property upon which the racetrack and grandstand improvements were located. The terms of this purchase and sale required the purchaser to bear the burden of any past due taxes on parcel *4* (not involved in the sale), and provided that the Abels would cooperate with the purchaser in attempts to obtain relief from the unpaid 1966 and 1967 taxes on parcel 4. In accordance with the terms of this agreement the second half of 1966 taxes on parcel 4 in the amount of $50,319.68, including interest and fees, and 1967 taxes on parcel 4 in the amount of $116,842.89, including interest and fees, were finally paid "under protest" on September 30, 1970 by Transamerica Title Insurance Company from funds it was holding in connection with the above-mentioned sale arrangement. Subsequent to the payment of the taxes, the Abels filed their complaint in October 1970 against the taxing authorities seeking a refund of the 1966 and 1967 taxes for improvements assessed against parcel 4. After a trial to the court, the trial judge entered judgment in favor of the defendant taxing authorities, denying appellants any relief on their complaint.

At this point it is important to emphasize that appellants in their superior court complaint did not contend that the lands and improvements constituting the racetrack facility were assessed discriminatorily or in excess of their full cash value. Their sole complaint was that the improvements on parcel 5 were erroneously assessed against parcel 4. It is admitted that if the improvements had been assessed against parcel 5 rather than parcel 4, the total amount of the taxes would have remained the same. In other words, under a proper assessment, the appellants total tax burden would have been unchanged for the years in question.

The appellants urge that an Arizona taxpayer has "a right to rely on the taxing authorities proper distribution of taxes to the correct parcel of his property." Assuming the existence of such a right, it is our opinion that under the facts of this case the right is unavailable to the appellants as a basis for their claims for refunds.

During the years 1965, 1966 and that portion of 1967 pertinent to the questions raised here, A.R.S. § 42–223 provided as follows:

"Every person owning or having charge or control of property in the state subject to taxation, whether or not he receives from the assessor a notice and demand to do so, . . . shall prepare and deliver to the assessor between the first Monday in January and May 20 each year a correct list of such property or a statement that he has no property which he is required to list."

A.R.S. § 42–225 provided that the list required by § 42–223 "shall contain":

"1. The lands owned by the person returning the list described by section or part of section, township and range, and, when a part of a section is not a legal subdivision or is unsurveyed, by some other description sufficient to identify it.

\* \* \* \* \* \*

"3. The improvements *on all such land* and town lots." (Emphasis added).

The record is clear that no such list was submitted by the appellants or anyone in their behalf for the years during which it is now claimed that the improvements on parcel 5 were erroneously assessed against parcel 4. The parcels involved were contiguous and all were utilized together by the appellants in their racetrack enterprise. If the appellants had filed the list required by § 42–223 and had thereby advised the assessor of the specific parcel upon which the improvements were located, they could have eliminated the possibility of an error of the type made by the assessor. As we have previously indicated, this error did

not result in requiring the appellants to pay more than their legal share of the *ad valorem* tax burden, and in fact during the period involved the appellants apparently enjoyed a very favorable assessment ratio. Under these circumstances it is our opinion that the trial court correctly denied the appellants long-delayed efforts to upset the assessment of the improvements against parcel 4 for the years 1966 and 1967.

In view of the foregoing, it is unnecessary to consider the many other contentions urged by appellees in support of the trail court's judgment.

The judgment is affirmed.

JACOBSON, C. J., Division 1, and EUBANK, J., concur.