803 P.2d 464

The **LEE DEVELOPMENT COMPANY, an Arizona corporation; the Lee Company, formerly known as Lee/OGA, a limited partnership, Plaintiffs/Counter – Defendants/Appellees/Cross – Appellants,**

v.

**L. Roy PAPP and Marilyn Papp, husband and wife, d/b/a L. Roy Papp & Associates, Defendants/Counter–Claimants/Appellants/Cross–Appellees.**

**No. 2 CA–CV 90–0121.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 29, 1990.

Lee, Stegall & Katz, P.C., Phoenix, by Jeffrey A. Murphy, for plaintiffs/counter-defendants/appellees/cross-appellants.

Ronald A. Spears, Phoenix, for defendants/counter-claimants/appellants/cross-appellees.

## OPINION

HOWARD, Judge.

This action arose out of a commercial lease for premises in a development in Phoenix known as Park Place. Appellees (Lee Development) filed a complaint for breach of lease. Appellants (Papp) answered and counterclaimed alleging the breach of a superceding written agreement and sought declaratory relief. The case was tried to the court, sitting without a jury, which, after making findings of fact and conclusions of law, entered judgment in favor of Lee Development on its complaint in the sum of $51,904.21 and in favor of Lee Development on Papp's counterclaim.

The trial court made the following findings of fact and conclusions of law:

1. That on or about February 5, 1985, Defendants entered into a lease agreement with Plaintiffs for office space located at 4647 North 32nd Street, Suite 115, Phoenix, Arizona.

2. That the commencement date of the lease was April 1, 1985, and the base rent was Three Thousand One Hundred Seventy–Seven and $^{75}/_{100}$ Dollars ($3,177.75) per month, pursuant to Section 6 of the lease. Rent tax at the commencement of the lease was four percent (4%).

3. That Defendants' rent under the Suite 115 lease was to commence December 1, 1985, and be paid monthly through November 30, 1988. The term of the Suite 115 lease was forty-four (44) months, including eight (8) months of free rent.

4. That by the time that Defendants took possession of Suite 115, the space referred to in Defendants' Right of First Refusal had been leased to other tenants.

5. That the Suite 115 lease did not obligate Plaintiffs to release Defendants from their obligations thereunder if additional space could not be provided.

6. That Plaintiffs and Defendants had several discussions regarding Defendants' need for additional space. Throughout these discussions, Defendants did not indicate a need for urgency.

7. That Defendants were never released from their obligations under the Suite 115 lease.

8. That Defendants were looking for office space other than Suite 200 between January 23, 1986 and February 20, 1986.

9. That on February 20, 1986, Plaintiffs advised Defendants that possession of Suite 200 could not be delivered then.

10. That Roy Papp told George Lee during the week of February 24, 1986 that it was a "blessing" that Defendants had not taken Suite 200 because Defendants needed even more space than was available there, and that Defendants would not be taking possession of Suite 200.

11. That by March 4, 1986, Defendants had no intention of taking possession of Suite 200.

12. That Defendants sought and obtained a lease for premises in a building other than that owned by Plaintiffs be-

cause Defendants wanted and needed more space than was available in Suite 200, and not because possession of Suite 200 was not tendered to Defendants on February 20, 1986.

13. That Plaintiffs sold the building known as Park Place, which included Suite 115, in May 1986, to OP & F Trust and Meyer Investments ("Meyer"). Meracor Development Corporation was involved as a participating lender.

14. That Plaintiffs sent Estoppel Certificates to all tenants, including Defendants. Defendants refused to sign any Estoppel Certificate.

15. That because of Defendants' refusal to sign the Estoppel Certificate, the purchasers of the building required that Plaintiffs and Meracor execute an Indemnity Agreement as a condition of the sale. The Indemnity Agreement required Plaintiffs and Meracor to indemnify the purchasers for any losses sustained by a breach of the Suite 115 lease by Defendants.

16. That neither Ms. Jones nor Meyer, as property manager for OP & F Trusts, had initiated legal action against Papp based on a breach of Suite 115.

17. That Defendants vacated Suite 115 on or about June 27, 1986, having paid rent through June 30, 1986, and having refused to pay rent beginning July 1, 1986, despite demand.

\* \* \* \* \* \*

19. That Defendants failed to prove damages arising from any breach by Plaintiffs of the agreement of January 23, 1986.

20. The Lee Company was not an Arizona corporation, but was a fictitious name used by George Lee. The Lee Development Company was an Arizona corporation owned and controlled by George Lee. Lee/OGA was an Arizona limited partnership in which the Lee Development Company was a general partner. That The Lee Development Company, the Lee Company, and Lee/OGA partnership are all entities by which George Lee did business and may be considered as the same entity for purposes of this Judgment.

## THE COURT FINDS AS A MATTER OF LAW:

A. Defendants breached the Suite 115 lease by vacating and abandoning the premises in violation of Section 15 of the Suite 115 lease and refusing to pay rent and their other obligations thereon since July 1, 1986.

B. Plaintiffs are the proper party to prosecute Defendants in an action for damages caused by Defendants' breach of the lease contract for Suite 115.

C. The letter of intent of January 23, 1986, which formed the basis of the First Claim for Relief of Defendants' Counterclaim, in which the Suite 115 Lease was to be amended to cover Suite 200, was a contract separate from the Suite 115 Lease, and did not indicate a starting date. The January 23 letter was an agreement to amend the Suite 115 Lease in the future. Said agreement was not performed by Plaintiffs and was made moot by the action of Defendants.

D. Both parties are eligible to recover their attorneys' fees incurred herein pursuant to A.R.S. § 12–341.01. Plaintiffs are entitled to an award of their reasonable attorneys' fees.

E. Defendants are not entitled to a Declaratory Judgment that the Suite 115 lease has not terminated.

F. The termination of Defendants' lease obligations for Suite 115 was contingent upon Defendants assuming lease obligations for Suite 200. Because Defendants never assumed the lease obligations for Suite 200, Defendants' obligations for Suite 115 never terminated.

G. Plaintiffs reasonably mitigated their damages.

H. There has been no acceptance of surrender of Suite 115.

I. Plaintiffs are entitled to Judgment in their favor and against Defendants, as of July 1, 1988, in the sum of $55,984.10.

J. That Defendants would have been entitled to Judgment in their favor and against Plaintiffs on the counterclaim, as

a result of Plaintiffs' failure to perform on the agreement to amend the Lease but for the action of Defendants in rendering the issue moot by negotiating for larger space in another facility prior to making demand on Plaintiffs for performance of the amendment and tender of Suite 200.

K. Defendants are entitled to a declaratory Judgment that any and all claims against Defendants arising out of the Lease Agreement dated February 5, 1985, including claims by Meyer Investment Properties, Inc. and Meracor Development Corporation have been adjudicated in this action.

\* \* \* \* \* \*

The letter of intent mentioned in the court's findings is as follows:

\* \* \* \* \* \*

Dear Roy,

Per our conversation of this date, we have agreed that you will lease the Lee Co. space commencing February 20, 1986 on the following terms and conditions:

A) Rent—$19.00 per sq. ft.

B) Term—3 years

C) Free Rent—3 months

In addition, we have agreed that we will adjust lighting to your requirements and will install two computer lines in the location designated by you. I am in the process of obtaining the electrical layout and the specs detailing physical dimensions and will provide same as soon as possible.

Thank you very much for your patience and cooperation.

Best regards,

/s/ Bob Blakey /s/ L Roy Papp

P.S. Of course, your obligations with regard to your existing space will expire and be of no further force in effect on February 20, 1986.

Papp presents the following issues on appeal:

1. Whether Appellants' obligations under the Suite 115 Lease terminated as a result of the express language of the January 23, 1986 Agreement regarding Suite 200?

2. Whether the evidence established that Appellees were not proper parties to assert claims arising out of the Suite 115 Lease?

3. Whether the damages awarded Appellees are excessive in light of the assignment documents?

4. Whether there has been an acceptance of surrender of the premises which precludes or limits Appellants' liability under the Suite 115 Lease?

5. Whether the trial court erred in admitting the Indemnity Agreement and the assignment documents into evidence?

And in its cross-appeal Lee Development contends the following:

A. *The Trial Court Erred By Finding Appellees' Damages Terminated As Of The Date A Replacement Tenant Was Found And Not Reducing Those Damages Only By Rent Actually Received From A Replacement Tenant.*

B. *The Trial Court Erred By Failing To Award Appellees' Pre–Judgment Interest And Late Charges On The Amount Owed From Appellants.*

C. *The Trial Court Erred By Awarding Appellants' Attorneys' Fees Since The Appellants Did Not Prevail On Their Counterclaim.*

THE JANUARY 23, 1986 AGREEMENT

Papp contends that Conclusion of Law C is erroneous in that the agreement does set forth a starting date. Furthermore, Papp argues that the conclusion of law is erroneous because there was evidence by Bob Blakey, who is a lawyer and acted as Lee Development's agent in sending the letter, that Papp contemplated that the letter was the final agreement and that no further documentation was to take place.

Papp also argues that the letter agreement does not make actual occupancy of Suite 200 precedent to the provisions in the letter and that, therefore, Conclusion of Law F, is erroneous.

■ We are bound by the trial court's findings of fact unless they are clearly erroneous, giving due regard to the oppor-

tunity of the trial court to view evidence and weigh the credibility of witnesses. *Donahoe v. Marston*, 26 Ariz.App. 187, 547 P.2d 39 (1976). We are not bound, however, by the trial court's conclusions of law nor findings that combine both fact and law when there is an error as to the law. *Park Central Development Co. v. Roberts Dry Goods, Inc.*, 11 Ariz.App. 58, 461 P.2d 702 (1969).

■ It is also the rule that implied in every judgment, in addition to express findings made by the court, is any additional finding that is necessary to sustain a judgment, if reasonably supported by the evidence, and not in conflict with the express findings; likewise, conclusions of law necessary to sustain a judgment are implied if supported by the evidence and the findings. *Coronado Co., Inc. v. Jacome's Department Store, Inc.*, 129 Ariz. 137, 629 P.2d 553 (App.1981).

■ We agree with Papp that Conclusion of Law C is erroneous in stating that there was no "starting date." However we do not believe this error is determinative of the issues in this case, and we do not agree with Papp's other contentions.

In addition to the findings of fact made by the trial court, George Lee testified that he and Papp, by January 1986, had reached an agreement as to the leasing of Suite 200. According to Lee they had agreed that a new lease would not be drawn up, but that there would be a short form amendment to the lease. The only thing that they had not agreed on was when Papp was going to take possession. Lee told Blakey, who had just started working for him in his marketing department, and who also was a lawyer, what he and Papp had agreed upon, but he told Blakey that they were going to have to figure out a "time frame." He instructed Blakey to contact Papp about this matter. The result was the letter agreement which was sent by Blakey to Papp and, according to Lee, never seen by him prior to February 20, 1986, when Papp came into the office and showed it to him. At that time, Lee told Papp that the suite was not immediately available, but would be available within a

week. Papp told Lee that there was no real urgency and maybe it was a blessing because the space was not big enough for his requirements and he would let Lee know the first part of the following week if he wanted the space. On February 25, 1986, Papp told Lee he would not be taking possession of the suite.

What the court is saying in Conclusions of Law C and J, and its findings of fact, is that there was an agreement to amend the lease, but any obligation of Lee Development to amend it ceased when Papp decided not to lease Suite 200. There is substantial evidence in support of its conclusions. There being no cancellation of any obligation under the existing lease of Suite 115, it was still in full force and effect when Papp vacated the premises.

## PROPER PARTIES

■ During the trial Papp attacked Lee Development's standing to bring the action for breach of lease and the trial court granted Lee Development's motion to amend the caption of the complaint to read as follows: "The Lee Development Company, an Arizona corporation, the Lee Company, fka Lee/OGA, a limited partnership, Plaintiffs."

The record also shows that the buyer of the property, OP & F Trust, assigned to "The Lee Company" its claim against Papp for breach of the lease. Papp argues that the assignment is invalid because there is no "Lee Company." We do not agree. The record shows, and the trial court found, that "The Lee Company" was a fictitious name used by George Lee for Lee Development Company. Lee Development Company was an Arizona corporation entitled to sue in its own right, and A.R.S. § 44–1236, which prohibits the filing of suit by Lee Development Company without the filing of a certificate of fictitious name, is inapplicable here because the statute requires registration only when the fictitious name does not show the name of the corporation doing business. In this case, the fictitious name, The Lee Company, is con-

tained in the name of the corporation, thus no certificate was required to be filed.

## THE DAMAGES

■ Because Papp refused to sign the estoppel certificate, Meracor and Lee Development had to agree to indemnify OP & F Trust in any action for the rent that Papp owed or any actions by Papp against OP & F Trust. Meracor and Lee Development paid OP & F Trust $30,000 over a period of time from a sublease of Suite 115. Papp argues that because Lee Development can have no greater rights than its assignor, OP & F Trust, and, since OP & F Trust had been paid $30,000 of the amount that Papp owed, this sum should have been set off against the sums the court found to be due and owing. We do not agree.

All of the parties involved in this case assigned any rights that they may have had against Papp to Lee Development but, in addition, Meracor and Lee Development were forced to pay $30,000 of the debt owed by Papp on the rental of Suite 115. Thus, after the assignments were made, Lee Development ended up with the right to collect Papp's entire debt.

## SURRENDER OF THE PREMISES

■ After Papp abandoned the premises, Meracor, on January 29, 1987, in the capacity of a landlord, subleased the premises to another party. In its sublease it recited its obligation to OP & F Trust under the indemnity agreement:

> WHEREAS, Landlord assumed all Papp's rights and obligations under the Lease pursuant to that certain Indemnity Agreement dated May 30, 1986, by and between Meyer and Landlord....

There was testimony that OP & F Trust gave Meracor the right to sublease Suite 115 to another tenant on its own behalf because Meracor had agreed to pay Papp's rent to OP & F Trust and Meracor wanted to be able to assure that there was rental income to help them pay the amounts due under the indemnity agreement.

From these facts Papp argues that there was an acceptance of the surrender be-cause the owner, OP & F Trust had accepted the indemnity agreement in lieu of its position as Papp's landlord. We do not agree.

■ Where the parties to a lease do some act so inconsistent with the relationship of landlord and tenant as to imply that they both agree to consider the lease at an end, and to yield up the estate, a cancellation of the lease under the principles of estoppel occurs. *Riggs v. Murdock,* 10 Ariz.App. 248, 458 P.2d 115 (1969). An unqualified retaking of possession of the premises by the landlord is a surrender by operation of law. *Riggs v. Murdock,* supra. The intent of the landlord in accepting the abandonment is a question of fact for the trier of fact. *Riggs v. Murdock,* supra.

■ In a commercial lease transaction if the tenant abandons the premises, the landlord is under a duty to make reasonable efforts to rent it at a fair rental. *Dushoff v. Phoenix Company,* 22 Ariz. App. 445, 528 P.2d 637 (1974), aff'd, 23 Ariz.App. 238, 532 P.2d 180 (1975).

If OP & F Trust had itself subleased the premises, there would be no question but that instead of accepting the surrender, OP & F Trust was simply performing its duty to mitigate damages. That it chose someone else to exercise this duty and accept an indemnity agreement does not mandate a different result and does not mean that it let Papp "off the hook." In fact, OP & F Trust still had the right, under the indemnity agreement, to sue Papp. The trial court did not err in concluding that OP & F Trust did not intend to accept Papp's surrender of the premises.

## ADMISSION OF THE INDEMNITY AGREEMENT AND ASSIGNMENTS

■ Papp raised a relevancy objection to these documents at trial. We believe the trial court correctly overruled the objection since they were relevant on the issue of Lee Development's standing to sue.

## THE CROSS–APPEAL

### I. *The Damages for the Balance of the Lease.*

 There were still approximately eight months left on Papp's lease after the trial in this case terminated. Even though the premises were vacant due to the sublease having expired, the trial court computed damages for future rent by subtracting the fair rental value of the premises from the stipulated rent. Lee Development contends that this was error and that there should have been no subtraction since there was no tenant in the premises. We do not agree. Damages for advance rent for the full term are the difference between the stipulated rental and the rental value. *Harden v. Drost,* 156 Ga.App. 363, 274 S.E.2d 748 (1980). To hold otherwise would allow the landlord a windfall if he succeeded in subleasing the premises after the judgment.

### II. *Prejudgment Interest.*

 The trial court denied Lee Development prejudgment interest on the grounds that it had already awarded Lee Development the late charges set forth in the lease. Lee Development contends it was entitled, in addition to the late charges, prejudgment interest. We agree. Prejudgment interest on liquidated claims is a matter of right. *Fleming v. Pima County,* 141 Ariz. 149, 685 P.2d 1301 (1984); *Lindsey v. University of Arizona,* 157 Ariz. 48, 754 P.2d 1152 (App.1987). There is no contention here that the claim was not liquidated.

The provision in the lease providing for late charges is as follows:

(32) LATE CHARGES: Tenant hereby acknowledges that late payment by Tenant to Landlord of rent and other sums due hereunder will cause Landlord to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to assertain (sic). Such costs include, but are not limited to, additional overhead and salary expenses related to following up late payments, the inconvenience and cost to Landlord of timely performing its own obligations by obtaining such sums from other sources, and processing and accounting charges and late charges which may be imposed on Landlord by the terms of any mortgage or trust deed covering the Premises. Accordingly, if any installment of rent or any other sums due from Tenant shall not be received by Landlord when due, Tenant shall pay to Landlord a late charge equal to ten percent (10%) of such overdue amount, and if payment is not received within ten (10) days after its due date, the amount due, including the late charge, shall thereafter bear interest at the highest rate permitted by law until paid. Similarly, if Tenant shall fail timely to perform or pay any of its obligations hereunder and Landlord shall perform or pay the same, then Tenant shall pay to Landlord a late charge equal to ten percent (10%) of the actual cost of such performance or payment. (Such performance or payment by Landlord includes, but is not limited to, the performance and/or payment contemplated by Paragraphs 8 and 36 herein.) The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Landlord will incur by reason of late payment or performance by Tenant. Acceptance of such late charge by Landlord shall in no event constitute a waiver of Tenant's default with respect to such overdue amount, nor prevent Landlord from exercising any of the other rights and remedies granted hereunder.

Prejudgment interest is in the nature of compensation for use by defendant of money to which the plaintiff is entitled. *Beech Aircraft Corp. v. Harvey,* 558 P.2d 879 (Alaska 1976); *Heid v. Destefano,* 41 Colo. App. 436, 586 P.2d 246 (1978). It is clear from the lease that the late charges were not compensation for defendant's use of the money, but for expenses which it was contemplated would be incurred from the failure to pay. The late charges were not the equivalent of prejudgment interest and the trial court erred in not awarding it.

We need not discuss Lee Development's contention that the trial court erroneously

awarded attorney's fees to Papp on its counterclaim because the record discloses that no such award was made.

Appellees have asked for and are entitled to their reasonable attorney's fees on appeal which will be awarded upon their compliance with 17B A.R.S. Civil Appellate Proc. Rules, Rule 21(c).

The trial court's finding that appellees were not entitled to prejudgment interest is vacated and set aside and the trial court is ordered to award appellees their prejudgment interest. The judgment of the trial court is affirmed in all other respects.

FERNANDEZ, C.J., and ROLL, P.J., concur.