916 P.2d 1084

185 Ariz. 368

**SCOTTSDALE PRINCESS PARTNER-
SHIP, an Arizona general partnership,
Plaintiff–Appellant, Cross–Appellee,**

v.

**MARICOPA COUNTY, a political subdivi-
sion of the State of Arizona; and the
Department of Revenue of the State of
Arizona, Defendants–Appellees, Cross–
Appellants.**

No. 1 CA–TX 93–0016.

Court of Appeals of Arizona,
Division 1, Department T.

Aug. 24, 1995.

Reconsideration Denied Nov. 9, 1995.

Review Denied May 21, 1996.

Nearhood & Associates, P.C. by James R. Nearhood, Richard D. Nearhood, Scottsdale, for plaintiff-appellant, cross-appellee.

Helm & Kyle, Ltd. by John D. Helm, Roberta S. Livesay, Ileen K. Keenan, Tempe, for defendant-appellee, cross-appellant Maricopa County.

Grant Woods, Arizona Attorney General by Steven R. Partridge, Assistant Attorney

General, Phoenix, for defendant-appellee, cross-appellant Department of Revenue.

## OPINION

LANKFORD, Presiding Judge.

Scottsdale Princess Partnership ("Taxpayer") appeals from a tax court judgment sustaining the legality of property tax assessments for tax years 1989 through 1992 relating to the parcels and improvements comprising the Scottsdale Princess Resort. Maricopa County cross-appeals from the tax court's order determining that taxpayer could not be held liable to pay additional taxes resulting from the transfer of improvements from the unsecured roll to the secured roll.[1] The Department of Revenue ("ADOR") separately cross-appeals from the tax court's order assessing $5,000 in attorney's fees and expenses against it for failing to comply with Rule 26.1, Arizona Rules of Civil Procedure.

The parties raise the following issues in the appeal and cross-appeal:

(1) Did the tax court err in sustaining the unsecured personal property tax assessment of the hotel complex and tennis center for tax years 1989 through 1991 and tennis casitas for the 1989 tax year?

(2) Did the tax court err in sustaining the assessment of the hotel complex and tennis center on the 1992 secured roll?

(3) Did the tax court err in sustaining the second, corrected assessment of taxes against the hotel complex and tennis center for the 1991 tax year?

(4) Did the tax court err in finding that the assessment of possessory interest taxes against taxpayer's lease with the City of Scottsdale for the 1992 tax year was not unconstitutional?

(5) Did the tax court err in withdrawing its order that taxpayer pay any difference in taxes resulting from the court's order transferring improvements from the unsecured roll to the secured roll?

(6) Did the tax court abuse its discretion in imposing sanctions against ADOR for failing to comply with Rule 26.1?

Arizona law requires a county's secured roll to include "all real property which is subject to the jurisdiction of the state of Arizona, regardless of ownership or by whom it is claimed, possessed, or controlled, and whether or not it is or may be exempt from taxation by law or by the Constitution of Arizona ..." Ariz.Rev.Stat.Ann. ("A.R.S.") § 42–238(B).

Personal property is generally assessed separately on the "unsecured roll." However, the secured roll lists personal property owned by persons who also own real property in the county valued at $200 or more. A.R.S. § 42–226.

The taxpayer partnership was organized in November 1985 to develop and operate the Scottsdale Princess Resort in Scottsdale, Arizona. The resort is situated on nine tax parcels, of which the taxpayer owns five parcels outright. The portions of the resort operation referred to as the tennis casitas and the golf villas are located on two of the five parcels the taxpayer owns. The three other owned parcels are used for parking.

The remaining four parcels are leased by the taxpayer from the City of Scottsdale. The resort's main hotel complex and tennis center are located on these parcels.

For the years 1988 through 1991, the improvements constituting the taxpayer's hotel complex and tennis center, located on land leased from the City of Scottsdale, were assessed on the unsecured personal property tax roll. In 1992, the Maricopa County Board of Supervisors adopted a resolution that effectively deleted the value of the hotel complex and the tennis center from the unsecured personal property tax roll. The resolution posted the hotel complex and tennis center to the secured roll under the parcel on which the tennis casitas were located.

For the tax years 1988 through 1992, the value of the taxpayer-owned land on which

---

1. Maricopa County's cross-appeal also encompassed the tax court's orders denying its motion to amend its complaint to add a counterclaim and granting the taxpayer's motion to dismiss one of the consolidated actions with prejudice. Before oral argument, the County notified this Court that it was withdrawing the issues it raised pertaining to those orders.

the taxpayer's tennis casitas are situated was taxed on the secured roll. In tax years 1988 and 1989, the improvement value of the tennis casitas was taxed on the unsecured personal property tax roll with the hotel complex and the tennis center. In tax years 1990 through 1992, the improvement value of the tennis casitas was moved to the secured roll under the parcel on which they are located.

For tax years 1988 through 1991, the Maricopa County Assessor assessed no taxes on the taxpayer's "possessory interest" in the land it leased from the City of Scottsdale. In tax year 1992, this possessory interest was assessed for the first time on the unsecured roll under the same account number as the hotel complex and the tennis center. In all tax years relevant to this appeal, pursuant to the exemptions provided by A.R.S. section 42–684, Maricopa County refrained from assessing numerous possessory interests of other taxpayers in improvements located on land leased from tax-exempt entities.

In December 1991, Maricopa County issued a 1991 unsecured personal property valuation notice and statement. The County listed taxpayer's unsecured personal property at a cash value of $1,792,725 and a tax due of $47,379.25 for the account containing the hotel complex and the tennis center. Taxpayer paid this tax in January 1992, before delinquency. That same month, the county issued a corrected tax bill for the same account and year. The corrected bill showed a total tax due of $1,172,424.28 and a credit for the amount taxpayer had paid under the original bill.

Beginning in 1990, taxpayer filed a series of four actions in the tax court that alleged, in part, the illegality of property tax assessments on the secured and unsecured rolls for tax years 1989 through 1992. These actions were consolidated and tried to the tax court in November 1992.

In January 1993, the tax court ruled that the taxpayer owned the hotel complex and the tennis center on the leased land and that these improvements were not "possessory

interests." Instead, these improvements were personal property that should have been assessed on the secured roll. However, the court held that erroneous placement of the hotel complex and tennis center on the unsecured roll did not preclude collection of the amount due; taxpayer would be required to pay or be refunded the difference between the amounts assessed on the unsecured roll and the amounts that would have been assessed on the secured roll. Similarly, the erroneous taxation of the tennis casitas on the unsecured roll did not entitle the taxpayer to a refund of all taxes paid, but only of the difference between the tax imposed and the tax that should have been imposed had the property been placed on the secured roll.

The court further found that the exemptions provided by A.R.S. section 42–684 from the personal property tax on possessory interests were not authorized by the Arizona Constitution.[2] Nevertheless, the taxing provisions applicable to possessory interests were not dependent on the validity of section 42–684 and could stand on their own. The fact that others had been exempt under section 42–684 did not invalidate the possessory interest taxes on this taxpayer's property.

Finally, the tax court found that both Maricopa County and the Department of Revenue had failed to comply with the disclosure requirements of Rule 26.1, Arizona Rules of Civil Procedure, and decided to assess attorneys' fees and costs incurred by the taxpayer as a result of the violations.

After the tax court rendered its initial ruling, taxpayer requested that it change the portion that ordered the taxpayer to pay the difference between the tax it paid for the hotel complex and the tennis center while they were incorrectly assessed on the unsecured rolls for 1989 through 1991 and what would have been the correct assessment on the secured rolls. The tax court agreed, finding that it had no authority to order taxpayer's taxes increased for any of the tax years in question.

**2.** Neither the Department of Revenue nor Maricopa County challenges this determination on

appeal.

On the taxpayer's application for attorneys' fees and costs and the department's opposition, the tax court found that a sanction of $5,000 was appropriate. Although each defendant was responsible for payment of the entire $5,000, taxpayer was not to receive more than $5,000 total.

The tax court entered final judgment in accordance with its rulings. The taxpayer timely appealed. ADOR cross-appealed from the sanctions against it. Maricopa County cross-appealed from the tax court's determination that it had no authority to award the taxing authorities any increase in taxes caused by the transfer of the hotel complex and the tennis center from the unsecured to the secured tax rolls.

We have jurisdiction pursuant to section 12–2101(B).[3]

■ This case presents questions involving the interpretation and application of the tax statutes. We are bound by the trial court's findings of fact unless they are clearly erroneous. *Lee Dev. Co. v. Papp,* 166 Ariz. 471, 475, 803 P.2d 464, 468 (App.1990). However, we review questions of law de novo. *Norriega v. Machado,* 179 Ariz. 348, 351, 878 P.2d 1386, 1389 (App.1994). We are bound neither by the trial court's conclusions of law nor by findings that combine both fact and law. *Lee Dev. Co.,* 166 Ariz. at 476, 803 P.2d at 469.

### I.

Taxpayer claims that because the hotel complex, tennis center, and tennis casitas were improperly assessed on the unsecured roll, taxpayer is entitled to a full refund of all taxes paid as a result of the assessment.[4]

■ Taxpayer correctly asserts that the hotel complex, tennis center, and tennis casitas should have been assessed on the secured roll for the years in question. They qualify for assessment on the secured roll as either "real property" under A.R.S. section 42–238(B) or as "personal property" owned by a taxpayer who also owns real property worth over $200 in value in Maricopa County.[5]

■ However, this error should not result in the government's forfeiture of all taxes paid by taxpayer. The validity of imposition of the tax depends on whether the statute protects taxpayers or merely provides a procedure for tax administration. Generally, if the purpose of a tax statute is to protect or benefit a taxpayer, the statute is mandatory. *County of Maricopa v. Garfield,* 109 Ariz. 503, 504, 513 P.2d 932, 933 (1973). Any actions performed by the government which do not comply with a mandatory statute are invalid. *Kincannon v. Irwin,* 64 Ariz. 307, 310, 169 P.2d 861, 864 (1946). If, instead, the statute is intended to "promote dispatch, method, system and uniformity in modes of proceeding, or designed merely for the information of administrative officers" it is deemed to be directory. *Id., quoting* 51 Am.Jur. Taxation § 305. The violation of such a statute does not result in the invalidation of the act. *Id.*

■ In determining whether a requirement is mandatory or directory, we must consider whether the legislature would have intended the statute to be mandatory in light of the result of invalidating the tax. "Language, mandatory in form, may be deemed directory when the legislative purpose can best be carried out by such construction." *Department of Revenue v. Southern Union Gas Co.,* 119 Ariz. 512, 514, 582 P.2d 158, 160 (1978). In this case, we doubt that the legislature intended to prevent ADOR from collecting any taxes from property assessed on

---

**3.** The appeal is assigned to Department T of this Court pursuant to A.R.S. sections 12–120.04(G) and 12–170(C).

**4.** Taxpayer does not contest the tax court's determination that, although located on the land it leased from the City of Scottsdale, the hotel complex and tennis center belonged to taxpayer and not to the City. Taxpayer therefore does not contend that the improvements were exempt from property taxation as municipal property.

**5.** The taxpayer's analysis does not make clear the need for determining the proper characterization of the improvements on leased land as real or personal for property tax purposes once it is established that they should properly have been assessed on the secured roll. We accordingly do not explore or decide that issue.

the wrong roll when the harm can be remedied merely by taxing the property as if it had been correctly listed.

Other statutes suggest that the legislature's intent is to uphold assessments whenever possible. A.R.S. section 42–205 provides: "No lack of description, misdescription or irregularity in the description of property assessed upon the roll, if it can be ascertained or proved what property is intended, shall invalidate an assessment." Similarly, A.R.S. section 42–309(C) provides: "No informality in complying with the requirements of this chapter shall render any proceeding for the collection of taxes illegal."

We find it inconceivable that the legislature intended that all taxes assessed against property listed on the wrong roll be forfeited. We conclude that the requirement that real property be placed on the secured roll is directory.

Accordingly, we hold that although the hotel complex, tennis center, and tennis casitas were improperly assessed on the unsecured roll, taxpayer is not entitled to a full refund of all taxes paid as a result of the assessment and instead is entitled only to a refund of any excess tax paid.

## II.

Taxpayer also claims entitlement to a full refund because the hotel complex and tennis center were erroneously assessed under the largest of the taxpayer's owned parcels on the 1992 secured roll.

Under A.R.S. section 42–312, taxes levied on real or personal property on the secured roll are a lien on the property assessed. Additionally, "personal property shall be liable for taxes levied on real property, and real property shall be liable for taxes levied on personal property ..." A.R.S. § 42–312(C). Furthermore, "all taxes on improvements upon real estate assessed to a person other than the owner of the real estate shall be a lien upon the land and improvements." A.R.S. § 42–203.

Taxpayer argues that this assessment was illegal because the hotel and tennis center were taxpayer-owned improvements situated on the leased parcels. Taxpayer urges that by assessing the improvements against taxpayer's owned parcel, the tax lien attached to that parcel. If the improvements had been assessed under the City's parcel, on which they were located, the tax lien would have attached to land owned by the City. Thus, taxpayer's land was improperly subjected to the tax lien for improvements which are not situated on its land. Taxpayer claims that because it is mandatory that improvements be assessed on the parcel on which it is located, it is entitled to a refund of all taxes illegally assessed.

The taxpayer's argument does not support its request for a full refund of all taxes. Although the assessment of the hotel complex and tennis center against the wrong parcel certainly would have entitled the taxpayer to a refund of the amount in excess of the amount of a correct assessment, the taxpayer was not entitled to a full refund without regard to the actual harm it sustained. In a similar case, *Abel v. Lafferty*, 21 Ariz. App. 572, 522 P.2d 37 (1974), the taxpayers sought a full refund of taxes paid on improvements because the county erroneously assessed taxpayers' improvements on the wrong parcel of taxpayers' land. The improvements were located on parcel four, but they were assessed on parcel five. We denied the taxpayers' claim stating: "It is admitted that if the improvements had been assessed against parcel 5 rather than parcel 4, the total amount of the taxes would have remained the same. In other words, under a proper assessment, the appellants' total tax burden would have been unchanged for the years in question." *Id.* at 574, 522 P.2d at 39.

Like the taxpayers in *Abel*, taxpayer's sole objective in this action has been to obtain refunds of taxes already paid. Taxpayer did not seek equitable relief canceling an illegal tax lien. A full refund would merely penalize the government and provide a windfall to taxpayer.

Thus, we hold that the tax court did not err in declining to refund the 1992 taxes paid on the hotel complex and tennis center.

## III.

Taxpayer also seeks a full refund of all taxes paid on the county's corrected assessment of taxes against the hotel complex and tennis center on the 1991 unsecured roll.

The county's initial undervaluation of taxpayer's improvements on the original 1991 unsecured roll was caused by a computer malfunction. Data was timely and correctly entered, but due to a programming error, the property values were incorrect. With the approval of the Maricopa County Board of Supervisors, the assessor issued a corrected assessment pursuant to A.R.S. section 42–405, which provides in part:

A. Omissions, errors or defects in an assessment list or tax roll may be supplied or corrected by the assessor, at any time before the return of the assessment roll to the county treasurer, or by the county treasurer at any time thereafter, subject in either case to the prior approval of the department and the county board of supervisors ...

Citing *In re Westward Look Dev. Corp., Inc. v. Department of Revenue*, 138 Ariz. 88, 673 P.2d 26 (App.1983), taxpayer asserts that an assessor may never reassess improvements that have escaped taxation. In *Westward Look*, the assessor valued and taxed a parcel of land for several years, but was unaware of new improvements located on the property during those years. When the improvements were discovered, the assessor not only included them in a new assessment, but assessed additional taxes for prior years. He relied on A.R.S. section 42–236(D), which provided in part:

D. ... [A]ny property found by the assessor to have escaped assessment in any year is liable for the taxes for the year in which the discovery was made and for any escaped taxes in the three years immediately preceding the year of discovery. The

county treasurer shall take whatever action is necessary to collect the taxes and penalty due as provided in this chapter.

We held that because improved real property [6] was to be assessed as a unit, overlooked improvements could not alone constitute "escaped property" for which back taxes could be collected under A.R.S. section 42–236(D). Part of the rationale for this holding was that an unsuspecting purchaser might acquire the property relying on tax rolls indicating that all taxes had been paid. However, once back taxes were levied against the escaped property, "the property might then be subjected to a lien for taxes for years prior to the date of purchase due to the fact that certain improvements had not been assessed and taxed during prior years." 138 Ariz. at 90, 673 P.2d at 28.

*Westward Look* is clearly distinguishable. There the taxing authorities attempted to collect increased taxes from prior years. Here the correction pertained to the same tax year on which taxes had been billed erroneously. Further, in *Westward Look*, back taxes were sought because the property had "escaped" taxation within the meaning of A.R.S. section 42–236(D). In contrast, the "property" here was assessed, but at less than the correct value, and the error was corrected under A.R.S. section 42–405(A).

The assessor acted within his authority in correcting an erroneously computed assessment under section 42–405(A). Accordingly, the tax court did not err in denying a refund for 1991.

## IV.

Taxpayer's last contention is that the tax court erred in finding that the assessment of possessory interest taxes against taxpayer's lease with the City of Scottsdale for the 1992 tax year was constitutional.[7] In support of

---

6. The land and improvements in *Westward Look Development* were owned by a single taxpayer.

7. In the tax court, taxpayer contended that all taxation of possessory interests in government property as unsecured personal property pursuant to A.R.S. sections 42–681 through 42–686 should be invalidated on the ground that A.R.S. sections 42–684 and 42–685 contain broad-rang-

ing exemptions unauthorized by the Arizona Constitution. The tax court agreed as to the exemptions in A.R.S. section 42–684, but held that section 42–685 did not provide an unauthorized tax exemption. Neither Maricopa County nor the Department of Revenue appealed from the tax court's ruling invalidating A.R.S. section 42–684.

its claim, taxpayer raises two alternative grounds: first that sections 42–684 and 42–685 provided unconstitutional tax exemptions and second that to require taxpayer to pay the possessory interest tax would result in unconstitutional discrimination.

### A.

In support of its claim, taxpayer first contends that section 42–685 provided unconstitutional tax exemptions.

Section 42–685 provides beneficial tax treatment for property in redevelopment areas. The statute provides that possessory interests that are located in redevelopment areas created under A.R.S. section 36–1471 *et seq.* and meet specified criteria shall "for a limited period beginning on the creation of the possessory interest and ending eight years from the date of the issuance of the certificate of occupancy, be taxed based on the greater of the value of the property before its acquisition for redevelopment, if the property was acquired for redevelopment, or its value as unimproved land." A.R.S. § 42–685(A), (C). All other possessory interests located in redevelopment areas are to be taxed "during the first ten years of a lease creating a possessory interest ... based only on the value of the improvements, if any, exclusive of the value of the land itself," and thereafter based on the value of both land and improvements. A.R.S. § 42–685(D)(1), (2).

■ Taxpayer contends that under the Arizona Constitution, the only property that may be exempted is that which is specifically exempted by the Arizona Constitution or Federal law. However, unlike section 42–684, section 42–685 is not an exemption statute. Instead of creating exemptions from any tax as in section 42–684, section 42–685 simply provides for a different tax valuation rule to be applied in redevelopment areas.[8]

Taxpayer also contends that the tax court should have invalidated the entire possessory interest taxing scheme when it invalidated the exemptions under A.R.S. section 42–684. Taxpayer argues that the section 42–684 exemptions were so integral and necessary to the overall possessory taxing scheme that the legislature would not have enacted the tax at all without the exemptions. Taxpayer theorizes that because section 42–684 provides exemptions for so many types of possessory interests, including certain redevelopment areas, the legislature would not have enacted the possessory interest tax without the exemptions.

In support of this view, taxpayer cites *Selective Life Insurance Co. v. Equitable Life Assurance Soc.*, 101 Ariz. 594, 422 P.2d 710 (1967). There the legislature had enacted a new insurance statute and repealed the prior law. The supreme court found the new statute unconstitutional. At the same time, despite the presence of a severability clause, the court found the repealer of the old law inoperative because the legislature would not have intended to leave the insurance industry entirely unregulated.

The circumstances of *Selective Life* are absent here. The enactment that adopted the possessory interest tax provides:

> If any provision of this article is declared invalid by a court of competent jurisdiction, such invalidity does not affect other provisions which can be given effect without the invalid provision and to this end the provisions of this article are declared to be severable.

1985 Ariz. Sess.Laws ch. 264, § 4.

■ We find nothing indicating that the taxing provisions of A.R.S. sections 42–681 through 42–686 are not to be applied without the exemptions in section 42–684. The valid and invalid provisions are not so inextricably entwined and interdependent that the legislature would never have enacted only a portion of them. *See Hudson v. Kelly*, 76 Ariz. 255,

---

8. Similarly, the provisions in section 42–685 do not amount to partial exemptions. For example, in *Powell v. Gleason*, 50 Ariz. 542, 74 P.2d 47 (1937), the statute taxed motor vehicles only if and when actually registered for use. This statute amounted to a partial exemption. Instead, A.R.S. section 42–685 in effect established classi- fications of possessory interests that were subject to special valuation rules, not unlike that provided in A.R.S. section 42–141(B)(7) for land used for agricultural purposes. *Cf.* A.R.S. § 42–227 (establishing assessment percentages ranging from 1 percent to 30 percent for different classes of property).

263 P.2d 362 (1953).[9] The rest of the provisions create the tax, and section 42–684 creates the exemptions. There is no evidence of legislative intent that the tax would not have been created without these exemptions.

Taxpayer nonetheless points to 1993 Ariz. Sess.Laws chapter 191 as indicating a clear legislative purpose to again protect from possessory interest taxation the properties previously exempted under section 42–684. Chapter 191 restores four exemptions of the fifteen former exemptions and applies a preferential low tax rate to some of the former 42–684 exemptions. However, the legislature's subsequent preferential treatment to certain possessory interests does not support the conclusion that during a prior period without exemptions, the entire possessory tax scheme was invalid. In fact, the legislature revealed its intent by choosing to neither repeal the entire possessory interest tax scheme nor apply chapter 191 retroactively. The legislature's choices indicate that the possessory interest tax is viable without the exemptions.

The tax court did not err in declining to invalidate the entire possessory interests legislation.

### B.

Alternatively, taxpayer contends that if it does not receive a refund of possessory interest taxes it paid in 1992, unconstitutional discrimination will result: Taxpayer will have paid possessory interest taxes for the relevant tax years while other taxpayers will have been excused from the same tax.

■ The tax court ruled—and the county and ADOR do not contest—that the section 42–684 exemptions "must be stricken." However, the court found that taxpayer's possessory interest, its lease, had been properly taxed for tax year 1992. The court reasoned that "the fact that other businesses have been given exemptions under A.R.S. § 42–684 does not make the tax on [taxpayer's] property invalid—that simply shows

that others are not entitled to the benefits they have received." We agree with the tax court.

The United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Arizona Constitution similarly states: "... All taxes shall be uniform upon the same class of property ..." Art. 9, § 1.

These constitutional provisions are not violated unless the taxing authority treats similarly situated persons unequally. *Gosnell Dev. Corp. v. Arizona Dep't of Revenue*, 154 Ariz. 539, 541, 744 P.2d 451, 453 (App.1987). In this case, ADOR apparently treated all taxpayers alike until the tax court invalidated the exemptions in this case. The inequality would arise only if *after* the tax court invalidated section 42–684, ADOR were to honor exemptions to other similarly situated taxpayers not given to taxpayer. That the tax court's ruling directly affects only the taxpayer in this case does not mean that the imposition of the tax in accord with that ruling is discriminatory, at least without evidence of how other taxpayers were treated by ADOR after the ruling.

### V.

On cross-appeal, the county argues that the tax court erred by deleting its previous order that taxpayer pay any difference in taxes resulting from the transfer of the hotel complex and tennis center from the unsecured roll to the secured roll for tax years 1989 through 1991.

The tax court held that A.R.S. section 42–204, on which taxpayer partially based its claims for refunds in all years, did not authorize the court to award additional taxes to the county. Because taxpayer's claim for the 1991 tax year was based solely on A.R.S. section 42–204, the tax court held that no additional taxes could be awarded for that year. It further held that for tax years 1989

---

9. Furthermore, contrary to taxpayer's argument, the word "invalid" in the severability clause is not so nonspecific that one cannot determine whether or not the legislature meant it to encompass declarations of unconstitutionality. Nonconformance to the state or federal constitution is perhaps the most common, obvious basis on which a statutory provision may be determined "invalid."

and 1990, a county could recover additional taxes under A.R.S. sections 42–177 and 42–178 only by bringing a counterclaim, which the county had not done.

■ On appeal, the county first contends that A.R.S. section 42–204 does not preclude the recovery of additional taxes. Section 42–204 provides in pertinent part:

A. Any person upon whom a tax has been imposed or levied under any law relating to taxation shall not be permitted to test the validity or amount of tax, either as plaintiff or defendant, if any of the taxes:

1. Levied and assessed in previous years against the property of taxpayer have not been paid.

2. Which are the subject of the action are not paid prior to becoming delinquent.

3. Becoming due on the property during the pendency of the action are not paid prior to becoming delinquent.

. . . .

C. Within one year after payment of the first installment of the tax, an action may be maintained to recover any tax illegally collected, and if the tax due is determined to be less than the amount paid, the excess shall be refunded in the manner provided by this title.

. . . .

E. Any taxpayer dissatisfied with the valuation or classification of his property may appeal to the superior court only in the time and manner prescribed in § 42–176, subsections A, B and C or § 42–246, whichever is applicable.

While the county is correct that nothing in section 42–204 forbids an award of additional taxes, neither does the statute authorize such a recovery. Nor does the county cite any other authority for its authorization to recover the additional amount.

The county nevertheless claims that the authority to increase the taxes is inherent in the statute. Section 42–204(A) requires that taxpayer keep all property taxes current to avoid dismissal of his action. When the tax court determined that the property should be transferred from the unsecured roll to the secured roll, additional property taxes were owed for the years 1990 and 1991. The county claims that the court properly ordered taxpayer to pay the additional sum because unless taxpayer did so, the court would have lost jurisdiction over the case.

■ It is true that a court cannot maintain jurisdiction in a pending refund action unless the taxes in question have been paid. *See Shew v. Jeffers,* 147 Ariz. 192, 709 P.2d 549 (App.1985). Section 42–204 requires a taxpayer to pay the taxes that it contests before bringing suit. Without such a requirement, there is a risk that delinquent taxpayers would try to "forestall the inevitable" by bringing suit. *Id.* at 193–94, 709 P.2d at 550–51.

■ However, the taxpayer here paid all taxes pending at the time of the filing of the suit. There was no risk that the taxpayer would use the pendency of the action to defer a tax obligation. That more taxes were generated as a result of the adjudication did not divest the court of jurisdiction. The continuous payment requirement of section 42–204(A)(3) refers to new tax obligations arising in the tax year in which the action is pending.

Second, the county contends that the tax court was wrong in holding that because taxpayer's refund action for 1991 was based exclusively on A.R.S. section 42–204, A.R.S. section 42–178 did not authorize an award of additional taxes for that tax year.

At all material times section 42–178 contained the following provision:

If two or more actions have been filed pursuant to this title for the same taxable year with respect to the same property, such actions shall be consolidated for the purpose of trial. *If issues other than valuation or classification are raised by either party, the priority provisions of subsection A of this section shall not apply.*

A.R.S. § 42–178(H) (1990); A.R.S. § 42–178(I) (1991) (emphasis added). In addition, Section 42–178(D) and (E), provided:

D. If the court finds that the valuation is:

. . . .

3. Deficient, the judgment shall be for the state or county, whichever is appropriate, and against taxpayer for the costs of the appeal and the taxes due on the property in excess of the amount originally levied and assessed. The judgment shall be a lien upon the real and personal property of the appellant with like effect as though the assessment had originally been in the amount of the judgment.

E. If the court finds that the classification is in error, it shall determine the correct classification. The taxes due on the property shall be determined using the classification determined by the court regardless of whether the department filed an appeal pursuant to § 42–141, subsection B, paragraph 7.

■ Subsections 42–178(D) and (E), on which the county relies to authorize back tax awards, apply only to valuation and classification claims. Taxpayer brought no such claim for tax year 1991. Contrary to the county's assertion, taxpayer's claim for a refund of taxes paid as a result of the assessment of the hotel complex and tennis center on the unsecured roll was not a claim for a "classification error." Taxpayer's claim was that the mode in which its improvements were assessed was illegal and void. Moreover, "unsecured personal property" and "secured personal property" are not property "classifications." "Classification" of property refers to assessment categorization pursuant to A.R.S. sections 42–161 et seq. and 42–227 according to specific character and use.

■ We also reject the county's suggestion that the remedies of section 42–178 apply because this is a consolidated action involving some classification or valuation issues. The consolidation provision of section 42–178 applies only to actions filed "for the same taxable year ..." Accordingly, the presence of valuation/classification issues in earlier tax years does not render the provisions of section 42–178 applicable to the action for tax year 1991 because it was solely an attack on the validity of the tax pursuant to section 42–204.

Lastly, the county relies on A.R.S. section 42–253, which provides:

Except as otherwise provided by law, when the valuation of any property is determined and lawfully placed on the roll, such property is thereby assessed for the taxes which may be levied against the property as provided in this title.

The county argues that when the tax court entered judgment placing the hotel complex and tennis center on the secured roll, section 42–253 operated automatically to assess increased sums of taxes for the tax years 1990 and 1991. The county urges that the tax court effectively ordered that taxes which are lawfully due go uncollected, which it lacked authority to do.

■ The county has cited this statute for the first time in its reply brief on cross-appeal. The county does not refer to it in either its pleadings in the tax court or its opening brief on cross-appeal. Appellate courts will not consider new arguments on appeal. *Dillon–Malik, Inc. v. Wactor,* 151 Ariz. 452, 728 P.2d 671 (App.1986).

Moreover, this argument has no merit. The tax court's judgment does not direct that additional taxes found due for tax years 1990 or 1991 should never be collected. It merely declines to award the county judgment for additional taxes as part of this action.[10]

Accordingly, we hold that the tax court did not err by declining to direct the taxpayer to pay the difference in tax resulting from the transfer of property from the unsecured roll to the secured roll.

## VI.

ADOR cross-appeals from the portion of the judgment that imposed a sanction of $5,000 on both ADOR and the county for their independent failures to comply with the

---

10. We express no opinion concerning whether A.R.S. section 42–253, in conjunction with other procedural statutes in title 42, would or would not support independent proceedings for the collection of additional taxes for 1990 and 1991 based on the tax court's judgment in this case.

disclosure requirements of Rule 26.1, Arizona Rules of Civil Procedure.[11]

Taxpayer based its claim for sanctions against ADOR on its initial failure to identify Joe Saguid as a person they believed might have knowledge or information pertaining to the action. Saguid was head of ADOR's personal property division and in charge of supervising the taxation of possessory interests.

In granting sanctions against ADOR, the tax court specifically rejected ADOR's contention that it did not know that the undisclosed information existed. We interpret this as equivalent to a finding that the government failed to disclose information within Rule 26.1(a)(4) that could have been "ascertained, learned or acquired by reasonable inquiry and investigation." Rule 26.1(b)(3). Consequently, we cannot overturn this finding on appeal unless we find it clearly erroneous, that is, unsupported by any substantial evidence. Rule 52(a), Ariz.R.Civ.P.; *Federoff v. Pioneer Title & Trust Co. of Arizona,* 166 Ariz. 383, 803 P.2d 104 (1990); *Visco v. Universal Refuse Removal Co.,* 11 Ariz.App. 73, 462 P.2d 90 (1969).

Rule 26.1 provides in pertinent part:

(a) **Duty to Disclose, Scope.** Within the times set forth in subdivision (b), each party shall disclose in writing to every other party:

. . . .

(4) The names and addresses of all persons whom the party believes may have knowledge or information relevant to the events, transactions, or occurrences that gave rise to the action, and the nature of the knowledge or information each such individual is believed to possess.

. . . .

(b) **Time for Disclosure; a Continuing Duty.**

. . . .

(3) All disclosures shall include information and data in the possession, custody and control of the parties as well as that which can be ascertained, learned or acquired by reasonable inquiry and investigation.

. . . .

(g) **Failure to Comply.** If a party or attorney fails to comply with the provisions of this rule, the court upon motion of a party or on the court's own motion shall make such orders with regard to such conduct as are just, including any of the orders provided in Rule 16(f).

The sanctions of Rule 16(f), incorporated in Rule 26.1(g), allow an award of a party's expenses, including attorney's fees, incurred because of noncompliance with the rule. The award may be made "unless the judge finds that the noncompliance was substantially justified, or that other circumstances make an award of expenses unjust."

▬ Reasonable inquiry by ADOR would have uncovered the name of the head of the department's personal property division and revealed that he supervised the taxation of personal property, including possessory interests. It is obvious from the nature of the information itself and the identity of the person that the tax court's finding was supported by substantial evidence.

ADOR's reliance on *Bryan v. Riddel,* 178 Ariz. 472, 875 P.2d 131 (1994), is misplaced. There, the trial court entirely precluded the use of undisclosed witnesses whose names and information had largely been revealed through other discovery and who constituted "virtually all of plaintiffs' key witnesses." Under the circumstances the court found the sanction applied was "unnecessarily punitive," stating that "[t]he situation here called for something less than the effective dismissal of plaintiffs' case." *Id.* at 477, 875 P.2d at 136. *Bryan* does not stand for the broad proposition that a violation of Rule 26.1 such as that involved here cannot support a monetary sanction.

In addition, ADOR contends that the tax court's imposition of what amounted to joint and several liability on the county and ADOR for taxpayer's fees and expenses was improper.

Taxpayers sought approximately $11,000 in fees and expenses against ADOR and rough-

---

**11.** The county has not appealed from the tax court's sanctions order.

ly four times that amount against the county. The tax court awarded taxpayer a total of $5000, and held both ADOR and the county responsible for the entire sum. However, the record provides no basis to determine whether the amount awarded represents the reasonable attorneys' fees and expenses occasioned by ADOR's noncompliance with Rule 26.1, the county's noncompliance, or a combination of the two.

We vacate the order as it applies to ADOR only, and remand with directions to find and assess against ADOR the reasonable attorneys' fees and expenses, if any, actually incurred by taxpayer due to ADOR's failure to disclose.

### VII.

Taxpayer requests awards of attorneys' fees against the county and ADOR pursuant to A.R.S. section 12–348 in connection with its appeal and with the defense of the county's and ADOR's cross-appeals. As to taxpayer's appeal, we grant the request limited to the issue on which taxpayer has prevailed. We also grant taxpayer's request for an award of fees against the county in connection with the county's cross-appeal.

Affirming in part and reversing in part, we remand for proceedings consistent with this decision.

EHRLICH and TOCI, JJ., concur.